## HALSTEAD ET AL. v. VANDALIA RAILROAD COMPANY.

[No. 7,235. Filed June 20, 1911.]

1. APPEAL.—*Assignments of Errors.*—*Joint.*—*Several.*—*Husband and Wife.*—Where a landowner and his wife jointly and severally assign errors, on appeal, in a condemnation case, whether such joint assignment and the wife's separate assignment present any question will not be determined where the landowner's separate assignment presents all the questions. p. 98.

2. EMINENT DOMAIN. — *Railroads.* — *Damages.*—*Instructions.*—In an action for the appropriation by a railroad company of a tract of land including a house, an instruction that "evidence has been permitted * * * as to the value of the walls and foundation of the building * * * and the value of other separate parts of said building, and also of a well on the land," and that "the real question * * * is the fair market value of the improvements taken as a whole, and as they existed on the real estate appropriated" on the day of the filing of the instrument of appropriation, is not prejudicial, where the case was tried, and evidence admitted, on the theory that the damage should cover the depreciation in value of the land and improvements, and where another instruction was given stating that "the measure of damages is the difference in the value of the real estate at the time of the appropriation, and the value of the residue after' the strip is taken under the appropriation proceedings," and that "the words 'real estate' include both the land and the improvements thereon." p. 98.

3. EMINENT DOMAIN.—*Damages.*—*Instruction.*—*"Should" Consider Evidence.*—In an eminent domain proceeding, an instruction that the jury "should" consider the evidence of the amount paid by the defendant for the real estate in question, along with all the other evidence in the case, in determining the damages, is not erroneous, since it is the duty of the jury to consider all the evidence and give each particular part thereof the weight it deserves. p. 99.

4. EMINENT DOMAIN.—*Damages.*—*Specific Future Use.*—In an eminent domain case, an instruction that opinions of witnesses as to the damages sustained, based upon the value of the property to the defendants for an intended specific future use "should be disregarded so far as [they are] so based upon the value for an intended specific future use," is correct. p. 100.

5. EMINENT DOMAIN. — *Evidence.* — *Appraisers' Report.*—*Instruction Curing Erroneous Admission of.*—In an eminent domain proceeding, an appeal to the circuit court compels a trial of the

case *de novo,* and the admission of evidence showing the amount of the assessment of damages by the appraisers is erroneous, but an instruction that the cause is on trial *de novo* regardless of such appraisement, that the jury has nothing to do with such appraisement, and that "it is not even evidence of any character * * * and [the jury] should not consider it at all," cures such error, especially where the evidence shows that substantial justice has been done. p. 100.

From the Putnam Circuit Court; *Thomas T. Moore,* Special Judge.

Action by the Vandalia Railroad Company against James N. Halstead and another. From a judgment for defendants, they appeal. *Affirmed.*

*G. S. Payne,* for appellants.

*G. A. Knight, John H. James, McNutt, McNutt & Wallace* and *John G. Williams,* for appellees.

Ibach, J.—This is an action and statutory proceeding by the Vandalia Railroad Company to condemn and appropriate for a right of way for steam railroad purposes a part of a tract of land in the city of Brazil, Indiana, owned by appellant James N. Halstead.

The complaint asked for the appointment of appraisers to assess the damages, and, after an answer was filed a hearing was had and appraisers were appointed, who filed their report, assessing damages to appellant Halstead in the sum of $3,100. Appellee filed exceptions to the assessment, on the ground of excessive damages, and prayed that the amount of damages be determined and assessed as in a civil action in the manner and form provided for by law, and upon issues thus formed, the cause was submitted to the jury, who found for appellant Halstead, and assessed his damages at $2,100.

The errors relied on for reversal are five in number, and arise out of the overruling of the motion for a new trial. They are the giving of instructions seven, twelve and fifteen, tendered by plaintiff, and the admission in evidence

of certain testimony of R. S. Hill and Conrad Dierdorf, who were among the appraisers of damages.

Appellee claims that the joint assignments of error by appellants James N. Halstead and Hattie B. Halstead, and the separate assignments of error by appellant Hattie B. Halstead, raise no question. It is unnecessary for us to decide this, as the separate assignments by appellant James N. Halstead fully present the errors relied upon for reversal.

Instruction fifteen is in the following words: "Evidence has been permitted to go before you as to the value of the walls and foundation of the building in controversy in this case, and the value of other separate parts of said building, and also of a well on the land appropriated by the plaintiff. This evidence has been permitted in order that you may arrive at a just and fair market value of the whole of the improvements on said real estate, and for no other purpose. The real question for your consideration is the fair market value of the improvements taken as a whole, and as they existed on the real estate appropriated on August 4, 1906."

Objection is made to the last clause of this instruction, on the ground that it informs the jury that the only element it is to consider in awarding damages is the value of the improvements; that in assessing the damages it should not allow for the value of the land taken, as well as of the improvements; and that it withdraws from consideration, as an element of damage sustained, the value of the land. We do not think this objection tenable. The case was tried on the theory that appellants were entitled to recover for the value of the land and of the improvements. Almost every witness in his testimony fixed a separate value on the land and the improvements, and in instruction two, given by the court on its own motion, the jury was correctly informed "that the measure of damages is the difference in the value of the real estate at the time of the appropriation, and the value of the

residue after the strip is taken under the appropriation proceedings. The words 'real estate' include both the land and the improvements thereon.''

Though instruction fifteen is not very clearly expressed, it seems to us to mean, and we believe that such would be the meaning placed upon it by ordinary men of fair intelligence, that the jury was permitted to consider the value of the improvements taken separately, for the purpose of enabling it to find the fair market value thereof, considered as a whole, not for the purpose of determining the entire damage, but of determining one element of that damage, namely, the value of the improvements. The instruction was clearly applicable to the evidence, and though not complete in itself, when taken in connection with the other instructions given it cannot be held to have misled the jury and harmed appellants.

Instruction seven is as follows: ''Evidence has been introduced in this case of the amount paid by defendants for the real estate, a part of which has been condemned by the plaintiff. You should consider such evidence of the purchase price paid by the defendants in connection with all the other evidence in the case in determining the market value of the property condemned.''

This instruction is objected to as peremptory, because, by the use of the word ''should,'' instead of ''may'' or ''might,'' it orders the jury to consider certain evidence which appellants claim they were at liberty to consider, but not bound so to do; and further, as singling out particular evidence for comment. Evidence was introduced of the purchase price paid by appellants for the property shortly before the condemnation. This evidence was proper, and the jury was told that it should consider such evidence in connection with all the evidence in the case. In telling the jury that it should consider the evidence, the judge announced only the duty which it was bound to perform, and as he did not comment on the weight to be given the evidence, he committed

no error in giving the instruction. It is always the duty of a jury trying a cause to take into consideration all the evidence introduced, and it is not error for the court so to instruct, but what weight is to be given any particular part is entirely for the jury. *Deal* v. *State* (1895), 140 Ind. 354, 368.

Instruction twelve is as follows: "And if the jury finds from any evidence that any witness who has given his opinion as to the market value of the property taken, has

4.   based such opinion in part upon the value of such property to the defendants for an intended specific future use, such opinion should be disregarded so far as it is so based upon the value for an intended specific future use."

This instruction was correct. Evidence had been given of the value of the property for an ice-plant, for which purpose appellant Halstead said he intended using it. The jury was correctly advised by the court's instruction eight that the availability of the property for other uses than those to which the land is actually applied, so far as it may be shown in evidence, and the uses for which the property is suitable, and to which it is adapted, may be taken into consideration. But inquiry as to damages cannot go into an intended specific future use, such a field of damages being held to be speculative. *Goodwine* v. *Evans* (1893), 134 Ind. 262.

In 2 Lewis, Eminent Domain (3d ed.) §709, the rule is announced as follows: "Proof must be limited to showing the present condition of the property and the uses to which it is naturally adapted. It is not competent for the owner to show to what use he intended to put the property, nor what-plans he had for its improvement, nor the probable future use of the property. Nothing can be allowed for damages to an intended use." This appears to be the rule recognized by our own Supreme Court.

5.   Objection is made to the admission in evidence of the testimony of the witnesses Hill and Dierdorf,

hereafter set forth, on the ground that it brings in evidence before the jury the appraisers' report.

Cross-examination of R. S. Hill is as follows: "Q. Did Mr. Halstead make any statement to you on that occasion about what he would do or was willing to do in regard to that property? A. He did. Q. Tell the jury what it was. A. He said that the salvage, he thought, he would give— that he would give $1,350. Q. For what? A. For the salvage in that building when it was torn down. Q. Did you take that into consideration in forming your opinion as to the value of the property, and what it ought to be? A. My judgment was that the salvage was worth $1,000, and I made that part of the estimate. Q. You gave it credit that far? A. For the amount of $1,000. Q. You say now that your value of that building is how much? What do you say the value is on the building alone? A. I said the value of the building and the ground was $4,000, and then I deducted from that $1,000 for the salvage, or the value of the material in the building, which left $3,000. Q. As a matter of fact you made an appraisement different from that, didn't you? A. Yes, sir, our appraisement was— Q. $3,100? A. That was done in reconciling— Q. $2,400 for the building and $700 for the ground? A. If you will allow me to explain the matter—I haven't got the figures. [Here, in answer to questions, witness identified his signature to a paper not named in the record, apparently the appraisers' report.] Q. And here it is stated that the value of the above-described piece of land on August 4, 1906, was $3,100. I will ask you, Mr. Hill, to tell the jury whether you remember what valuation you put on this building in your report. A. I don't remember the detail—I remember the aggregate was $3,100."

The following is the redirect examination of Conrad Dierdorf: "Q. Tell the jury whether Mr. Halstead made any statement to you, representing what he would pay for the salvage of the building to the railroad company, when you

were making this examination? A. He did. Q. Tell the jury what statement he made to you. A. He told me that he would give $1,200 for that building and take it away and tear it down for the material that was in it, and take it, and give the company that much for it.''

The entire purpose of the exception to the award was to obtain a reconsideration of the identical question submitted to and determined by the appraisers chosen for the purpose of fixing the damages to appellants caused by the taking of the land and improvements by appellee. The case, therefore, was to be tried *de novo,* and the award of damages, as made by such appraisers, and included in their report, could not be considered as competent evidence of the proper amount of damages sustained by appellants. This rule is well recognized by the courts of this State. *Trittipo* v. *Beaver* (1900), 155 Ind. 652, and numerous cases cited. The jury in such cases has but one duty to perform, and that is to assess the damages the defendant will sustain by the appropriation of his land to public use, and has no more right to know what the report or assessment of damages of the appraisers was, or the reasons which influenced that assessment, than any jury in any case has to know what the verdict of a previous jury was in the same case, or the method by which that previous jury arrived at its verdict. On exception to the award and trial *de novo,* the report appealed from is not evidence as to the amount of damages. 2 Lewis, Eminent Domain (3d ed.) §669; *Missouri Pac. R. Co.* v. *Roberts* (1905), 187 Mo. 309, 86 S. W. 91.

Though in the present case the appraisers' report was not admitted in evidence, the amount of the appraisement and some of the reasons influencing the fixing of that amount were brought in by the testimony of the appraisers, and this was error. However, this evidence was brought out by questions which were allowed, as the court informed counsel and the jury at the time, for the purpose of fixing the basis upon which the witnesses fixed their judgment of the value of the

property. The court's instructions two and three, given of its own motion, are as follows: "Said cause is before this court for issue, trial and judgment, *de novo*, regardless of said appraisement, for the purpose of litigating the question of the just compensation due said defendants for said appropriation of said property, as asked in said complaint. You have nothing whatever to do with the action of the court in having heretofore appointed appraisers in this matter. Under the provisions of the statute of the State, in reference to condemnation proceedings, this cause is tried by you as though no such appraisers and viewers had been appointed. You have nothing to do with their appraisement, and you are not at liberty to take into consideration any appraisement that may have been made at that time. It is not even evidence of any character, and is not before you, and you should not consider it at all."

The effect of these instructions was to withdraw the evidence from the consideration of the jury, and we shall presume that the jury was guided by them, in the absence of any showing to the contrary. An instruction to disregard evidence will, as a general rule, cure the error committed by the court in admitting it. Elliott, App. Proc. §701; *Citizens St. R. Co.* v. *Spahr* (1893), 7 Ind. App. 23; *Taylor* v. *Wootan* (1891), 1 Ind. App. 188, 50 Am. St. 200.

This court will not reverse a cause where the error committed has been harmless to the one complaining. Such seems to be the case here, and the verdict seems right on the evidence. It was shown that shortly before the condemnation, appellant Halstead had bought two-thirds of the entire property for a consideration which he testifies to as in fact $1,000, the amount named in the deed, but the vendor testified that the true consideration was $400. Nine years previously, said appellant had bought one-third of the property for $350, and during the period while he owned one-third, the building had been rented for about three years, and had returned in rentals scarcely more than the amount of the

taxes. About one-third of the entire tract, including the building, was taken in this proceeding. The building, a three-story brick, forty by sixty feet, had been standing about forty years, and was in bad repair. The values placed upon the property taken varied from $9,000, by appellant, to $700, by others, and some of the higher estimates, as brought out by testimony, were based on the value of new material required to construct a similar building. There was varying testimony as to the value of a well which was situated on the land taken. From all the evidence, the result arrived at by the jury seems to be a fair valuation.

The error in admitting the testimony in regard to the appraisers' report seeming to have been harmless to appellant, the judgment is affirmed.