STATE *v.* HAMER ET AL.

[No. 26,495.  Filed February 5, 1936.  Rehearing denied
April 27, 1937.]

*Philip Lutz, Jr.,* Attorney-General, and *William E. Bussell,* Deputy Attorney-General, for the State.

*Noel, Hickam, Boyd & Armstrong,* for appellees.

HUGHES, J.—This is an action to condemn 1.4 acres of land for state highway purposes. The land taken was from an eight acre tract. In the regular proceedings, appraisers were appointed who filed their report assessing damages in the sum of $2,200. Exceptions were filed, a trial had by a jury, and a verdict for $7,500 was returned, and judgment was rendered for $8,367.50, including interest.

Appellant relies upon two errors for reversal: First—In overruling appellant's motion for a new trial; and, second, in overruling appellant's motion to modify the judgment.

We will consider the errors complained of by appellant as set out in appellant's brief under propositions, points and authorities.

The appellant first contends that the court erred in refusing to give instructions numbered 6 and 7, tendered and requested by the appellant. Instruction No. 6 is as follows:

"I instruct you that if you find from the evidence that any witness who has given an opinion as to the market value of the property at the time of

the appropriation and the reasonable market value of the residue after the strip of real estate has been taken under the appropriation proceedings, has based such opinion in part on the value of such property to the defendant for an intended specific use to which the property has not been used generally in the past, that such opinion should be disregarded so far as it is based upon the value thereof for an intended specific future use."

Appellant insists that said instruction is the same as one given and approved in the case of *Halstead* v. *Vandalia R. Co.* (1911), 48 Ind. App. 96, 95 N. E. 439. The instructions are similar but not alike, nor in the exact words, as appellant claims. In the Halstead case, the instruction was as follows (p. 100) :

" 'And if the jury finds from any evidence that any witness who has given his opinion as to the market value of the property taken, has based such opinion in part upon the value of such property to the defendants for an intended specific future use, such opinion should be disregarded so far as it is so based upon the value for an intended specific future use.' "

In that case it was held that under the evidence the instruction was proper for the reason that evidence had been given of the value of the property for an ice-plant for which purpose Halstead said he intended to use it. It appears, however, in another instruction in said case that the availability of the property for other uses than those to which the land was actually applied, so far as it may be shown in evidence, and the uses for which the property is suitable, and to which it is adapted, may be taken into consideration, but inquiry as to damages cannot go into an intended specific use, such a field of damages being held to be speculative. In the instant case, all the evidence as to the use of the land, related to it as suitable for residential purposes. It was vacant land, and no residence or residences had heretofore been built upon it. Under instruction No. 6 the jury would

have been prevented from considering the value of the land as residential property for the reason that no residence had been built upon it. The instruction limited the value of the property to its past use. While it is held that an inquiry as to damages cannot go into an intended specific future use, and that proof must be limited to the present condition of the property, it is also the law that it may be shown the uses to which the property is naturally adapted. Because there was no residence upon the land would be no reason why it should not be shown that the land was suitable for residential purposes, and this was the purport of all the evidence. The pre-existing use of land is not the criterion alone by which the value of the land is measured. *The Ohio Valley Railway and Terminal Company* v. *Kerth* (1892), 130 Ind. 314, 30 N. E. 298; *Muncie and Portland Traction Company* v. *Hall et al.* (1910), 173 Ind. 292, 90 N. E. 312. There was no error in refusing to give instruction No. 6.

Complaint is made in refusing to give instruction No. 7, tendered by the appellant. We think this instruction is a proper statement of the law, but there was no error in refusing to give the same for the reason that the court of its own motion gave instructions substantially covering said instruction.

The next error complained of by appellant is the giving of instructions Nos. 1, 2, 3, 4, 5, 6, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21, on its own motion. Instruction No. 1 contained the plaintiff's complaint, defendants' exceptions to appraisers' report, defendants' objections to plaintiff's condemnation proceedings, and defendants' amendments to exceptions to appraisers' report. The part of the instruction complained of is the defendants' objections to plaintiff's condemnation proceedings. While we do not commend the instruction, we cannot see that there was any harm-

ful error in giving it. The issue made by plaintiff's complaint and by defendants' objections to plaintiff's condemnation proceedings had been fully disposed of by the finding and judgment of the trial court before any issue was made by the filing of exceptions to the report of the appraisers. It was not necessary to set out the defendants' objections to the condemnation proceedings, but we cannot see how the same could have misled the jury in any way in view of other instructions given in the case. Instruction No. 20 specifically told the jury that the State of Indiana had properly proceeded in the condemning of and taking of the land of Hamer and Hamer, and that the only question for the jury to decide was the amount of damage. In the case of *Chicago and Erie Railroad Company* v. *Biddinger, Administrator* (1915), 61 Ind. App. 419, 109 N. E. 953, the court said (p. 432):

> "The practice of reading the complaint to the jury by the court, instead of stating the issues and the theory of the complaint, or each paragraph as the case might be, is a practice, no doubt, subject to criticism, but is not reversible error."

Complaint is made of instructions 14, 15, and 16 for the reason, as appellant claims, that they assume that the residue of defendants' real estate after the appropriation was damaged by such appropriation of the part taken. We do not think these instructions are subject to such criticism. In instructions Nos. 14 and 15, the amount of damages is limited by the words "if any," and "as shown to your satsifaction," and other language which clearly shows that there was no assumption that the residue of the land had been damaged. Neither can it be said the language, in instruction No. 16, "the law requires that any damages to the remaining tracts . . ." when considered in view of other instructions given assumes that there was damage to the residue of the land.

Objection is also made to instructions 14 and 15 on the theory that they permitted the jury to consider damages to other separate lands of the appellee's which were not in the specific body of real estate in question. We do not agree to this contention. The complaint and all the evidence centered around one specific body of land and there is nothing in either instruction to indicate that any other tract of land was to be considered.

We do not think any error was committed in giving instructions Nos. 14, 15, and 16.

It is contended that instructions Nos. 17 and 20 are objectionable for the reason they overemphasize the same general legal proposition set out in No. 16, namely, that the jury should not take into consideration, in determining their verdict, any benefits which might accrue to the defendants by reason of the construction of a public highway through their land. It is true, as appellant contends, that all three of said instructions state the proposition of law as above set out, but we do not think in such a manner as amount to reversible error. Instruction No. 17 is the only one that considers the law on benefits alone. The other two take into consideration other elements, although they contain the same statement of the law as to benefits.

The last instruction complained of is No. 19. The instruction is as follows:

"I further instruct you if you find from a fair preponderance of all of the evidence that a market value has been established, as of May 23, 1932, for the strip of ground taken, then I instruct you that one of the elements in measuring damages for the particular strip of ground taken for the construction of State Road 31 is the fair market value for which the particular strip of land could be sold if the owners were willing to sell. But, I instruct you further, that if this particular strip of land taken by the public improvement of State Road 31 had upon May 23, 1932, a higher

market value by reason of a use or uses for which it might have been put to or adapted to, but to which it had not upon said date been put to, the owners Hamer and Hamer, are entitled to such market value when and if so enhanced, if you find from a fair preponderance of all of the evidence that such uses were contemplated and the particular strip taken was adaptable to such uses."

One of the last expressions of this court upon the measure of damages in a condemnation proceeding is found in the case of *Alberson Cemetery Association* v. *Fuhrer* (1923), 192 Ind. 606, 613, 137 N. E. 535:

"The true measure of damages for land having a market value when appropriated for a public use is the fair market value for which the land could be sold if the owner were willing to sell. If the land taken has a higher market value by reason of the minerals it contains or by reason of a use or uses for which it may be adapted, but to which it has not been put, the owner is entitled to the market value, as so enhanced. But if there is a market value, nothing more than that can be recovered, and the fact that the owner may have contemplated putting his land to some use, in the future, for which it shall have been worth more than it would bring in the market at the time it was appropriated, does not justify an assessment of damages in excess of the market value at the time of its appropriation. 2 Lewis Eminent Domain (3d ed.) §706; 10 R. C. L. 128, §112; 20 C. J. 728, et seq.; *Ohio Valley Railway and Terminal Co.* v. *Kerth* (1892), 130 Ind. 314, 319, 30 N. E. 298."

A case often cited in condemnation proceedings is that of *Boom* v. *Patterson* (1878), 98 U. S. 403, 407, wherein it is said:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with references to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is

it worth from its availability for valuable uses
. . . So many and varied are the circumstances to
be taken into account in determining the value of
property condemned for public purposes, that it is
perhaps impossible to formulate a rule to govern
its appraisement in all cases. Exceptional circum-
stances will modify the most carefully guarded
rule; but, as a general thing, we should say that the
compensation to the owner is to be estimated by
reference to the uses for which the property is suit-
able, having regard to the existing business or
wants of the community, or such as may be reason-
ably expected in the immediate future."

In view of the law as above stated, we cannot see any-
thing objectionable to instruction No. 19, and we think
it comes well within the law as laid down in the case of
*Alberson Cemetery Association* v. *Fuhrer, supra.* It
must be remembered that the evidence given related to
the tract of land for residential purposes, and the in-
struction, in effect, told the jury they might consider
the availability and desirability of the land for this
purpose, although it had not been heretofore used for
such purpose, and that the owners were entitled to the
enhanced market value for such use, "if it was en-
hanced," and if the land was adaptable to such use.
If the land taken has a higher market value by rea-
son of a use or uses for which it may be adapted, but to
which it has not been put, the owner of the land is
entitled to the market value, as so enhanced. If a tract
of land adjacent to a populous and growing city has
always been used for farming purposes, but is clearly
available for residential purpose, the fact that it had
never been put to this purpose but had been used as
farm land would not prevent a value being placed upon
it for residential purposes, and the owner would be
entitled to the market value as enhanced for this pur-
pose, if so enhanced.

It is insisted by appellant that error was committed

in sustaining the objection of the defendants to the competency of Frank E. Gates as a witness called to testify in behalf of the appellant as to the value of the real estate in question. The appellant put the witness on the stand and qualified him as a witness as to value. The appellees asked him the following preliminary question:

"Mr. Noel: You are one of the appraisers who made a report in this case which has been excepted to, are you not? Witness: Yes. Mr. Noel: Object to the competency of this witness. The Court: Objection sustained. Inasmuch as this witness whose report forms the basis for these exceptions he would not be competent as to the value of this real estate but can testify on all other matters in connection with it."

It is to be noted that a general objection was made to the competency of the witness, but the court sustained the objection only in part—that the witness would not be competent to testify as to value. We think the court was in error in holding that the witness was not qualified to testify for the reason he had been one of the appraisers. If otherwise qualified, the mere fact that he had been an appraiser in a condemnation proceeding would not render him incompetent to testify as to the value of the land. The fact that the appraisers' report is not admissible does not disqualify an appraiser. It is true the cause is tried *de novo,* but the appraiser can be examined as to the value of the land independent of the report and without reference to it, and, for that matter, without the jury knowing that he was an appraiser. If, on cross-examination, the adverse party sees fit to bring out the fact before the jury that the witness was an appraiser, the harm, if any, should not be charged to the other party. The rule that a juror cannot impeach his verdict is not in point nor applicable here. The case is tried *de novo,* and the appraisers, disregarding the

appraisers' report, may testify as to the value. We do not think the cases cited by appellees on this proposition are in point. The question presented in the case of *Halstead* v. *Vandalia R. Co., supra,* and relied upon by appellees to sustain the ruling of the court in sustaining the objection by appellee as to the competency of the witness Gates is entirely different from the one presented in the instant case. In that case two of the appraisers were examined and objection was made to the admission in evidence of their testimony on the ground that it brought in evidence before the jury the appraisers' report. The witnesses were examined with reference to the report, and, of course, this was error for the reason that the report was and is not competent evidence. The court held, however, that the admission of the evidence was not error for the reason that the error was cured by the court in giving an instruction withdrawing the evidence from the consideration by the jury. While the court in the Halstead case held, in effect, that the evidence was erroneous, it did not hold that appraisers were incompetent as witnesses to testify as to the value of the land, unconnected and apart from the appraisers' report. The inference, if any, in the Halstead case is that the court considered the appraisers competent witnesses as to the value of the property. We find the following language used in discussing the admission of the evidence, not the competency of the witnesses:

"Though in the present case the appraiser's report was not admitted in evidence, the amount of the appraisement and some of the reasons influencing the fixing of that amount were brought in by the testimony of the appraisers, and this was error. However, the evidence was brought out by questions which were allowed, as the court informed counsel and the jury at the time, for the purpose of fixing the basis upon which the witnesses fixed their judgment of the value of the property."

It is nowhere intimated in the opinion that the witnesses were incompetent to testify as to value.

In the case of *Wilson* v. *Talley et al.* (1896), 144 Ind. 74, 42 N. E. 362, 42 N. E. 1009, a similar question to the one here was presented. In this case a petition was filed for a public ditch before the county commissioners, and the proceedings finally were appealed to the circuit court, and the appellant claimed the lower court committed error in refusing to strike out certain testimony. The court said (p. 80):

> "It is argued that the court erred in overruling appellant's motion to strike out the testimony and opinion of William H. Thomas as to the value of appellant's lands to be affected by the proposed drainage. Thomas was one of the viewers and was also county assessor. We do not think the court abused any discretion in refusing to strike out his testimony. The weight to be given to the evidence so admitted was for the jury."

The following cases support and adopt the rule that an appraiser is a competent witness as to the value of the land in a proceeding, as in the instant case. *Northern States Power Co.* v. *Barnard et al.* (1932), 187 Minn. 353, 245 N. W. 609; *City of St. Louis* v. *Smith et al.* (1930), 325 Mo. 471, 30 S. W. (2d) 729; *School Dist. of Kansas City* v. *Phoenix Land Co.* (1923), 297 Mo. 332, 249 S. W. 51; *U. S.* v. *Beatty et al.* (1912), 198 F. 284; *Falkenhagen* v. *Yellow Medicine County* (1919), 144 Minn. 257, 175 N. W. 102; *In Re County Ditch No. 33, Marshall County* (1921), 150 Minn. 69, 184 N. W. 374.

It is contended by appellees that there was no error in sustaining the objection to the competency of the witness Gates for the reason that there was no pending question unanswered, and that the appellant made no offer to prove any fact by the witness. Appellees are in error as to this contention. It must be remembered that the objection went to the com-

petency of the witness, and not to the competency of the evidence, and a different rule applies.

In the case of *Sullivan, Administrator* v. *Sullivan* (1893), 6 Ind. App. 65, 32 N. E. 1132, the proper rule is announced, and is as follows (p. 68) :

> "Where the objection is to the right of the witness to testify at all, the party introducing such witness need not state what he expects to prove by him, as the question for the court to pass upon in such a case is not as to the competency of his testimony, but as to the competency of the witness himself."

See *State ex rel. Steigerwald* v. *Thomas* (1887), 111 Ind. 515, 13 N. E. 35; *Sutherland et al.* v. *Hankins et al.* (1877), 56 Ind. 343, 355.

It is also insisted by appellees that no error was committed in sustaining the objection for the reason that the evidence of Gates would have been merely cumulative; that six expert witnesses had testified on each side on the value of the real estate, and that it was within the court's discretion to refuse to hear more. Again, we think the appellees are in error. It is true that the court has some discretion upon certain issues in the case. And, if the court in advance notifies the parties that it will limit the number of witnesses, and the limitation is not too strict, then under such circumstances such ruling ordinarily would not be an abuse of discretion. And, even after the trial has begun, and witnesses have been introduced, it would not always be error for the court to limit the number. If a very large number of witnesses on both sides have been introduced to prove a certain fact, the court is often justified in saying to the parties that it does not care to hear any more evidence on a particular fact. We do not think such action would be held to be reversible error, unless it was clearly shown that harm was done. In the case of *Farmers and Citizens Building, Loan Fund and*

*Savings Association* v. *Rector* (1899), 22 Ind. App. 101, 103, 53 N. E. 297, this question was discussed. The court said:

"One of the reasons for a new trial was the court's refusal to permit certain witnesses to testify as to the value of the property. When appellant had introduced six witnesses on value, the court informed the parties that the number of witnesses on that question would be limited to twelve on each side. After appellant had introduced the twelfth witness, it offered to introduce another, which the court refused. Appellant then offered to prove by each of twenty-one witnesses named that the value of the property in question on September 1, 1896, was from $1,000 to $1,100.

"There was no error in this action of the court. The general rule in such cases is that the court should notify the parties of the intention to limit the number of witnesses before any evidence is introduced, yet, in the case at bar, appellant was permitted to introduce six witnesses after notice was given that the number would be limited; and if the court had in the first instance, before any evidence was introduced, limited the number of witnessess to six on each side, we could not say that there had been an abuse of discretion. The evidence offered was precisely of the same nature as that already introduced. An examination of the record fails to disclose that appellant was in any way harmed by this action of the court. Where a matter depends upon the discretion of the court, a clear abuse thereof must be made plain to warrant a reversal."

In the foregoing case, it is to be noted that the appellant was permitted to introduce six witnesses after notice was given that the number would be limited. In the instant case, however, there was no limitation as to the number of witnesses at the beginning of the trial, or at any other time, but the court absolutely refused witness Gates to testify as to value. It may be, for all this court knows, that appellant considered Gates to be his best expert witness on the question of value, and

that his evidence, if he had been permitted to testify, would have thrown more light upon the value of the land than any of the other witnesses of appellant. Some courts have held that it is absolutely necessary for the court to limit the number in advance of the trial, or before the party to be affected thereby has introduced his testimony upon the point. As said in the case of *Ruby* v. *Chicago M. & St. P. R. Co.* (1911), 150 Iowa 128, 133, 129 N. W. 817:

> "Of the power of the court to limit the number of witnesses to be used by either party upon a given point or proposition there is no doubt. But the order should be made either in advance of trial or before the party to be affected thereby has introduced his testimony upon the point. Otherwise the party might lose his most important witnesses and be deprived of their testimony. Ordinary attorneys marshal their testimony for the ultimate effect it will have upon the jury, and the court has no power over the matter, unless he notifies them in advance that he will limit the number of witnesses upon a given point."

While we do not approve all that is said in the above case, we think the general principles stated are correct. We do not think it is always absolutely necessary to announce in advance, or before the party to be affected thereby has introduced his testimony, the number of witnesses that will be permitted to testify. We do not think, however, in the instant case the fact that six witnesses had testified upon the question of value would justify the court in refusing to permit Gates, who had been properly qualified as a witness, to testify as to value. In other words, the fact that his evidence might have been cumulative would not cure the error in sustaining the objection as to his competency. Moreover, the objection was made as to his competency, and not to the fact that there had already been a sufficient number of witnesses who had testified.

We think the court committed error in sustaining the objection to the competency of the witness Gates, and in refusing him to testify as a witness to the value of the land.

No error was committed in permitting Homer G. Hamer, one of the owners, to testify to the value of the land. It is generally held that the owner of real ■ estate is assumed to possess sufficient acquaintance with it to estimate the value of the property although his knowledge on the subject might not be such as would qualify him to testify if he were not the owner. 22 C. J. 586.

Appellant insists that the court erred in overruling its motion to modify the judgment. The appellant filed its motion to modify the judgment by striking ■ from said judgment all parts thereof pertaining to the allowance of interest at the rate of 6 per cent upon the amount of the verdict from the date the appellant became entitled to possession of the land. We do not think the court erred in overruling the motion. In our judgment the correct rule as to interest is laid down in the case of *Schnull et al.* v. *Indianapolis Union Railway Company* (1921), 190 Ind. 572, 131 N. E. 51. The court said (p. 581):

> "The rule ought to be, and we hold, that if a landowner rejects the tender and successfully prosecutes his appeal, or in case the condemnor appeals and thereby prevents such owner from using the money thus tendered or paid into court, he would be entitled to interest upon the full amount of the award as determined on appeal from the time the condemnor took possession of the property."

A long list of both state and federal cases cited sustain this rule of law. The case of *United States* v. *Rogers* (1919), 257 Fed. 397, is an illuminating one upon this question, and fully sustains the foregoing statement of the law, as pronounced by this court.

Judgment reversed.