The CITY OF GARY, Indiana, and the Gary, Indiana, Fire Department, Appellants (Defendants Below),

v.

Joseph BELOVICH and Bernice Belovich, Appellees (Plaintiffs Below).

No. 64A04–9211–CV–401.

Court of Appeals of Indiana, Fourth District.

Nov. 15, 1993.

Gilbert King, Jr., Gary, for appellant.

James J. Nagy, Munster, for appellees.

MILLER, Judge.

In 1974, the City of Gary built Fire Station 7 on land it purchased from John and Judy Mravca in 1970. Unfortunately, the City forgot to record the deed to the land. Ten years later, an observant citizen noticed that the land was listed for sale by Lake County because of delinquent taxes. He paid the taxes and got title to the land and the improvement thereon, i.e., Fire Station 7. After two appeals to this court, a trial was held to assess damages against the City on the landowner's inverse condemnation[1] claim for the taking of his land. The jury found that the City owed the landowner damages of $350,000 as compensation for the taking.

The City claims the trial court erred by: (1) failing to grant its oral motion (made on morning of the damage trial) to dismiss and/or for summary judgment on the grounds of *res judicata;* (2) instructing the jury that the highest and best use of the property taken was a fire station; and (3) refusing to give two of the City's tendered instructions because neither were supported by the evidence.

We agree with the trial court and affirm.

### FACTS

In 1970, the City purchased three lots in the Miller section of Gary from the Mravcas to build a new fire station. The deed apparently was placed in a file and never recorded. The station was built and finally

---

1. Inverse condemnation is a cause of action against an entity with the power to condemn (usually a governmental defendant) to recover the value of property which has been taken in fact, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. 29A C.J.S. *Eminent Domain* § 381 (1993 supp.). "While the typical taking occurs when the government acts to con- demn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." *Id.* The action is brought by the owner rather than the condemnor. It is not based on tort, but on the constitutional prohibition of the taking of property without just compensation. *Id.*

put into service in 1974 as the City of Gary Fire Station 7. However, real estate taxes continued to accrue in the name of the Mravcas. About ten years later, an investor, Joseph Belovich, spotted the property on a list of properties owned and offered for sale by Lake County because of delinquent taxes. Belovich paid the back taxes and received a Commissioner's Deed [2] which he recorded, and then filed a quiet title action. Two months later, on May 23, 1985, the City found and finally recorded the deed it had received from the Mravcas. The trial court quieted title in favor of Belovich and the City appealed. This court affirmed. *City of Gary v. Belovich* (1987), Ind.App., 504 N.E.2d 286, *reh'g denied.*

Belovich then filed a complaint in inverse condemnation, slander of title and ejectment. The trial court granted Belovich's motion for summary judgment on the inverse condemnation claim (finding, in effect, that Belovich was entitled to damages), dismissed his other claims, dismissed the City's counter-claims and then appointed three appraisers to fix damages. The City appealed both the granting of summary judgment on Belovich's inverse condemnation claim and the denial of its counter-claim. This court affirmed both of the trial court's judgments and found the Occupying Claimants Statute (Ind.Code 32–11–1–12) did not apply because the City had lost title to both the real estate and the improvement thereon in the quiet title proceeding. *City of Gary v. Belovich* (1989), Ind.App., 544 N.E.2d 178, *reh'g denied, trans. denied.* Thus, the issue of condemnation (the taking) was resolved and the case returned to the trial court for the sole purpose of determining damages.

The appraisers tendered their report on August 31, 1990, with two appraisers assessing damages at $524,000 and another at $186,000. The City filed exceptions to the report on November 16, 1990, and requested a jury trial. On July 9, 1992, the City offered Belovich $80,000 to settle the case. Belovich refused this offer. On July 16, 1992, after a four day trial, the jury set Belovich's damages at $350,000. On October 5, 1992, the trial court calculated interest on this amount from the date of the taking, December 10, 1984, to July 16, 1992, to be $212,799.49. As per statute, he also awarded Belovich $6,735.59 for expenses, $31,896.00 for attorney fees and entered a judgment for $601,431.08 against the City.

## DECISION

### I. INTRODUCTION

▉ Indiana courts have long recognized that just compensation is commanded by our Constitution when private property is taken for public use. *Struble v. Elkhart County Park & Recreation Bd.* (1978), 175 Ind.App. 669, 373 N.E.2d 906, 907; *State Highway Com'n v. Blackiston Land Co., Inc.* (1973), 158 Ind.App. 93, 301 N.E.2d 663. *See also State v. Stabb* (1948), 226 Ind. 319, 79 N.E.2d 392; *Schnull v. Indianapolis Union Ry. Co.* (1921), 190 Ind. 572, 131 N.E. 51. " 'Just compensation' is comprised of two essential elements: the condemnation award and the interest thereon." *Struble, supra,* 373 N.E.2d at 909. The purpose of money damages—the condemnation award—is to compensate the landowner for the value of the land taken. Interest on the money damages is intended to compensate the landowner for his loss of use of the land from the time of taking until he receives the damages awarded. *Blackiston, supra.* During the time before payment, landowners that are deprived of the use of their property are entitled to interest on the damages awarded because they have neither the use of the land nor the money that has been awarded. *State ex rel. Ensley v. Superior Court of Marion County* (1959), 239 Ind. 583, 159 N.E.2d 115, 118; *Schnull, supra.*

### II. THE CITY'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

On the first morning of trial, the City orally moved the court to dismiss the dam-

---

**2.** The Lake County Board of County Commissioners gained title via a tax deed issued on September 24, 1984, after the owners of record (the Mravcas) failed to pay property taxes due on the land.

age action or grant it summary judgment on the grounds of *res judicata.* For the first time, the City claimed that the matter now before the court was, or might have been, determined in the quiet title suit brought by Belovich. The trial court denied the City's motions on two grounds: (1) the motion was not timely made; and (2) a party cannot bring a suit in inverse condemnation until title is established. The City claims its motions were timely because they went to the question of subject matter jurisdiction, which can be raised at any time, and the issues of damages and slander of title could have been raised in the quiet title action.

■ While we agree with the trial court that the City's motions were not timely, we also note there is no merit to the City's *res judicata* argument. *Res judicata* is an affirmative defense which must be pleaded by way of answer. Ind.Trial Rule 8(C). Here, the question of inverse condemnation was decided in the earlier judgment, *City of Gary v. Belovich,* 544 N.E.2d 178. The City did not raise this affirmative defense nor did it offer evidence of the quiet title proceeding, at the inverse condemnation trial. Therefore, the City waived its claim of *res judicata. Lake Monroe Regional Waste v. Waicukauski* (1986), Ind.App., 501 N.E.2d 466, 469. In addition, the decision of this court affirming the trial court's decision in the inverse condemnation matter is now the law of the case. The only issue on remand was that of damages.

The trial court did not err in denying the City's motions.

## III. JURY INSTRUCTIONS—HIGHEST AND BEST USE

The City claims the trial court erred and invaded the province of the jury when: (1) it instructed the jury that the highest and best use of the land taken was as a fire station; and (2) it rejected two of its instructions which would have permitted the jury to consider a use other than the highest and best.

### A. Instruction No. 5

■ The trial court's Instruction No. 5 stated: "You are instructed that as a matter of law the highest and best use of the property and improvements of the property in question is a fire station." R. 443. The City argues that this instruction prevented the jury from considering the land's value for residential purposes (which it clearly did), which value would be considerably less (which it was) than its value as a fire station. Belovich responds that the City attempted to value the property taken at its lowest and worst use—instead of its highest and best.

The City's argument is based upon its confusing the concept of market value with the concept of highest and best use. *See* 29A C.J.S. *Eminent Domain* § 118. After much discussion, the following dialogue occurred (out of the hearing of the jury) between the trial court and the City's attorneys, Mr. Clark and Mr. Kovachevich:

> **The Court:** You're—you're not comprehending, Mr. Clark. I have limited the plaintiffs [Belovich] to that. If you want to go to a higher use than residential and a fire station, then you're certainly free to. The jury may pick that it's suitable for the Sears Tower and then say that the property is worth $6,000,000. I have limited them. You don't understand that? I have limited them to what they can say, as far as the use of that property. If you are going to say that its value is a garbage dump, then, that's a different story.
>
> **Mr. Clark:** Well, what—what you have done is—
>
> **The Court:** I have limited the plaintiffs.
>
> **Mr. Clark:** No.
>
> **The Court:** If you're going to say it's for a lesser use—Are you going to say it's for a lesser use?
>
> **Mr. Clark:** *We're going to say it can be for a lesser use than a fire station.*
>
> **The Court:** But, you're using it as a fire station, so—
>
> **Mr. Clark:** That's true.

**The Court:** So, I don't understand your argument. I have limited the plaintiffs, not you.

\* \* \* \* \* \*

**Mr. Kovachevich:** No. What I am saying is that the plaintiff is entitled to the market value of the real estate, in its highest and best use.

**The Court:** Okay. You want to raise it to a level higher than a fire station? Fine, then you go ahead, Mr. Clark. You raise it to a higher level than what I have limited the plaintiffs to, and if they [the jury] find it's worth more money, then so be it.

R. 941–942.

\* \* \* \* \* \*

**Mr. Kovachevich:** The bottom line is this, that in the marketplace, Mr. Belovich is competing for the potential purchasers. The competition, in the marketplace, that the City is facing is the possibility—the possibility that other buyers may buy it for a speculative reason.

**The Court:** Yeah.

**Mr. Kovachevich:** That they may get the zoning changed.

**The Court:** The law is the highest and best use, Mr. Kovachevich.

**Mr. Kovachevich:** But the point is that the—

**The Court:** *The highest and best use is as a fire station.*

**Mr. Kovachevich:** *Granted.*

**The Court:** Okay.

R. 948.

\* \* \* \* \* \*

**The Court:** Well, I have yet to figure out what your theory is. The property is still at its highest and best use, and the highest and best use of that is as a fire department, because that is what you are using it for.

**Mr. Clark:** Fine. But that's the—but that's the—

**The Court:** I will say this. If you want to remove that limitation that I have placed on the plaintiffs and raise that property to a higher use, certainly, go ahead and do so.

**Mr. Clark:** I, I, I think that we're—It's not a matter of raising it to—to a—to a higher use. *Everyone will testify that in their depositions everyone said that the highest and best use is as a fire station.* The question is, what is its market value?

**The Court:** Oh, yeah. That's what they [the jury] are going to decide.

R. 950 (emphasis added).

In fact, all the experts for both Belovich and the City testified that the highest and best use of the property was as a fire station. Also, from the above, two things are apparent: (1) Belovich did not object to being limited to the highest and best use value; and (2) the City's attorneys, while claiming the property had other possible uses, conceded in open court that a fire station was the highest and best use. This concession was a judicial admission.

The law of condemnation entitles Belovich to damages based upon the highest and best use of the property at the time of the taking. *State v. Peterson* (1978), 269 Ind. 340, 381 N.E.2d 83, 85.[3] If the land has a fair market value at the time of its taking, the measure of damages is the highest price a willing buyer would pay and a willing seller would accept, both being fully informed, and the property being exposed for a reasonable period of time. Black's Law Dictionary 971 (6th ed. 1990). The key words, "both being fully informed," mean that any knowledgeable buyer or seller would have to be aware of the legal use which would bring the highest value.[4]

---

**3.** Highest and best use is the legal use of land or buildings which will bring the greatest economic return over time. Black's Law Dictionary 728 (6th ed. 1990). As used in condemnation law, the highest and best use is the legal use that will bring the highest dollar amount of damages.

**4.** Where the property has no market value, or where the market value is too difficult to find, or where methods of establishing market value are not satisfactory or conclusive, and do not afford just compensation to the condemnee, or when its application would result in manifest

We first note that both parties conceded or agreed (and all their experts confirmed) that the highest and best use of the property was a fire station. As such, its estimated value ranged from $186,000 to over $600,000. But the City also attempted to show that the land's value for residential purposes was between $45,000 and $59,000 because comparative market values for undeveloped residential land was in this range. This may be true, however, it also was irrelevant. In *City of Lafayette v. Beeler* (1978), 178 Ind.App. 281, 381 N.E.2d 1287, 1291, this court found that, when both parties (as here) have conceded the highest and best use, the evidence of value was limited to such use. The property involved was undeveloped residential acreage—its highest and best use. An attempt to increase the amount of damages by considering its value as a platted subdivision was held to be improper.

Here, the situation is almost the same—the difference being an attempt by the City to *lower* the value by departing from the highest and best use. The facts of *Beeler* may be slightly altered, but the law is the same and applies here as well. The criteria for determining value is the highest and best use at the time of the taking. *Peterson, supra.* The trial court's Instruction No. 5 is supported by the evidence and was a limitation on both Belovich and the City. The trial court did not err by giving instruction No. 5.

## B. The City's Tendered Instructions

The City tendered the following two instructions which the trial court rejected:

### Defendant's No. 11

The pre-existing use of the land is not the sole criterion by which its value is measured.

### Defendant's No. 12

In determining value of property taken by condemnation or appropriation, the availability and adaptability of property for uses other than that to which it is applied at the time of taking, so far as it may appear from the evidence, may be taken into consideration, but inquiry as to damages cannot go into an intended specific use.

R. 431, 432. The City's entire argument regarding these instructions is that: (1) "instruction number 11 is supported by current case law, *see State v. Hamer* (1936), 211 Ind. 570, 199 N.E. 589"; and (2) "instruction 12 is an accurate statement of the law, *see State of Indiana v. Tibbles* (1954), 234 Ind. 47, 123 N.E.2d 170." City's Brief at 13 (citations corrected). The City then concludes that "both instructions are not covered by other instructions and are relevant to the evidence presented in the case." *Id.* A party is normally entitled to have a

injustice to the property owner or to the public, resort must be had to other data to ascertain its value. Accordingly, the intrinsic or actual value of the property, or its value to the owner, may be considered or recovered. 29A C.J.S. *Eminent Domain* § 118, *supra; see also Southern Indiana Gas & Elec. Co. v. Russell* (1983), Ind.App., 451 N.E.2d 673, 676 *citing* 4 *Nichol's The Law of Eminent Domain, supra.*

*Russell* involved the condemnation of easements by Indiana Gas and Electric for utility transmission lines. Indiana Gas objected to the use by the trial court of the cost approach because the property taken was neither unique nor was there any taking of the fee. In reversing because the cost approach was inappropriate in these circumstances, the *Russell* court wrote:

However, because of the inherent unique qualities of every condemned parcel of land, we have recognized that the utilization of vari-

ous appraisal techniques is often necessary to an accurate determination of fair market value. Thus, we have refused to adopt a single method of appraisal to the exclusion of others....

[W]hen neither the comparable sales approach nor the income approach are applicable, many states recognize the cost approach as a viable method of determining fair market value. (Citation omitted).... [U]se of the cost approach is proper only when the condemned "property or structure is unique, the use to which it is put is based upon this uniqueness, and it is reasonable to believe that the owner will replace the building with one similar in character."

*Id.* It is obvious that a fire station falls into the category of property which has no market comparable sales. However, here the parties do not challenge the manner in which the experts arrived at their values.

tendered instruction read to the jury, *Miller Brewing Co. v. Best Beers of Bloomington Inc.* (1991), Ind.App., 579 N.E.2d 626, 635, rehearing denied; *Underly v. Advance Machine Co.* (1993), Ind.App., 605 N.E.2d 1186, 1191, rehearing denied. We will reverse the trial court for failing to give a tendered instruction only where:

(1) the instruction is a correct statement of law;

(2) it is supported by the evidence;

(3) it does not repeat material adequately covered by other instructions; and

(4) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction.

*Underly*, at 1191.

The City fails to understand that neither of these instructions are supported by the evidence nor are applicable to the facts of this case. Instructions as to value of other uses, such as these, might be relevant when the evidence is in conflict as to highest and best use. *State of Indiana v. City of Terre Haute* (1968), 250 Ind. 613, 238 N.E.2d 459, 461. However, both instructions incorrectly state the law of this case because they would permit the jury to base value on uses other than the highest and best. No evidence was introduced at trial by either the City or Belovich to show that other uses of the property would result in a value higher than that of a fire station. The trial court did not err by rejecting these two instructions.

Affirmed.

CONOVER and GARRARD, JJ., concurring.