AGT, INC., An Indiana Corporation,
Appellant,

v.

CITY OF LAFAYETTE, Indiana
Redevelopment Commission,
Appellees.

No. 79A04–0207–CV–310.

Court of Appeals of Indiana.

July 21, 2003.

Rehearing Denied Sept. 8, 2003.

Transfer Denied Jan. 8, 2004.

Anthony G. Taylor, Lafayette, IN, Appellant Pro Se.

Jerome L. Withered, Withered & Corrigan, LLP, Lafayette, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

The City of Lafayette, Indiana, Redevelopment Commission (the City) commenced

an eminent domain proceeding to condemn certain real estate owned by AGT, Inc. (AGT) for construction of a fire station. During the pendency of the proceedings, AGT's interest in said land was conveyed to Anthony G. Taylor, the president and owner of AGT. Following a jury trial upon the issue of the compensation owed Taylor, the trial court ordered the City to pay Taylor $215,332 in damages. On appeal, Taylor presents, pro se, the following re-stated issue for review: Did the trial court commit reversible error by overruling Taylor's objection to the identification of three of the City's expert witnesses as court-appointed appraisers and their subsequent testimony regarding the amount of damages assessed in the appraisers' report?

We reverse and remand.

The City filed its Complaint in Condemnation on February 7, 2001. Thereafter, on March 5, 2001, the trial court entered an Order of Appropriation and, pursuant to statute, appointed three local appraisers, Edward Geswein, Charlie Coffman, and Michael Godby, to assess damages. The appraisers subsequently filed their Report of Appraisers with the trial court, assessing the landowner's damages at $215,000. On April 24, 2001, the trial court accepted the report and entered Judgment of Condemnation and Order, noting that the City had paid to the clerk of the court the amount of the award as determined by the court-appointed appraisers. On May 1, 2001, Defendant's Exception to Appraisers Report and Request for Trial by Jury was filed.

At trial, each party presented evidence regarding the fair market value of Taylor's property. In addition to other witnesses, Taylor presented testimony from two expert witnesses, both commercial real estate brokers, who appraised the fair market value of the property at $349,000. Taylor, however, testified on his own be-half that he believed the fair market value to be approximately $506,000. The City's first expert witness opined the fair market value to be $180,000. The City then proceeded to call each of the court-appointed appraisers as expert witnesses, beginning with Edward Geswein. During the City's direct examination of Geswein, the following colloquy occurred:

Q. Have you ever been appointed by any courts to be an expert witness in condemnation cases?

A. Prior to this one, no.

Q. At some point after this lawsuit was filed, were you asked to appraise the property at 18th and South, the subject of this lawsuit?

A. No. Subject to the lawsuit.

Q. Let me start again—let me start again. Were you asked to appraise the property at 18th and South?

A. Yes.

Q. The property that's part of this lawsuit.

A. O, I see (inaudible), yes. George Heid—Judge Heid asked me and two other fellows to appraise the property. Yes.

Q. Who were the other two guys?

A. Mike Godby and Charlie Kauffman [sic].

Q. All right.

BY MR. TAYLOR: Excuse me, Your Honor. Permission to approach.

BY THE COURT: Yes.

AT THIS TIME CONFERENCE IS HELD BETWEEN THE COURT AND THE PARTIES OUT OF THE HEARING OF THE JURY.

BY MR. TAYLOR: (inaudible) outside the presence of the jury.

BY THE COURT: Will it take long?

BY MR. TAYLOR: About a minute. This information Mr. Withered knows

is inadmissible and I move to disqualify all three of their testimony.

BY THE COURT: Why is that?

BY MR. TAYLOR: Court appointed appraisers cannot testify (inaudible) court appointed appraisers.

BY THE COURT: Do you have some authority on that?

BY MR. TAYLOR: Yes, I do.

BY THE COURT: Let me see it.

BY MR. TAYLOR: Just a second. Your Honor, could I request just a five minute break to locate this?

\* \* \*

BY THE COURT: I want to state on the record. I'm not sure it got—

BY MR. TAYLOR: Please—it is inadmissible for him to be identified as a court appointed appraiser. He is more than welcome to testify as a witness on behalf of the plaintiff or defendant but he cannot testify or be identified nor can the amount of the court appointed appraiser [sic] be revealed. It is grounds for appeal and Mr. Withered knows that. We discussed it before we filed the motion in limine a week and a half ago.

BY THE COURT: The motion in limine.

BY MR. TAYLOR: We filed a motion in limine regarding the belated documents that we had requested from him we discussed the fact of the court appointed appraisers.

BY THE COURT: Who discussed?

BY MR. TAYLOR: Mr. Withered and I. My point is that it is inadmissible to identify or to reveal the dollar amount of the court appointed—it's extremely prejudicial to identify them as being appointed by the Court.

BY THE COURT: The Court is required to appoint the appraisers.

BY MR. TAYLOR: Yes. I understand that but they may not be identified as court appointed appraisers.

BY THE COURT: You know, I've tried a lot of these and I've never had that question raised and I don't think that's the law.

BY MR. TAYLOR: Okay. My objection is on the record. That will be sufficient then.

BY THE COURT: Okay. Well, that's why I asked if you had some authority.

BY MR. TAYLOR: I do and I apologize because Mr. Withered and I had discussed it and I did not anticipate the issue even becoming before us.

BY MR. WITHERED: I'm not sure what the law is Judge, but I can tell you this. I did not deliberately solicit that by my question. Mr. Geswein just kind of let it come out. I said were you asked to do an appraisal. I didn't say did someone appoint you or anything like that.

BY MR. TAYLOR: You asked if he had been appointed previously by a court.

BY MR. WITHERED: Well, that's a different story. That's a different question.

BY MR. TAYLOR: Okay.

BY THE COURT: I don't think there's anything improper about it. We may be making some law, but I don't think we are. If he's an appraiser, he's an appraiser, whoever he's appointed by. Okay. Objection is overruled.

*Transcript* at 140–43.

In light of the trial court's ruling, Geswein was permitted to testify regarding his appointment, with Coffman and Godby, to appraise the property in question. Geswein also testified as to how the three arrived at an appraised fair market value

of $215,000 in their report. Coffman and Godby followed with similar testimony regarding their appraisal.[1] During Godby's testimony, the City introduced into evidence a document (City's Exhibit II) detailing the comparables he used in the appraisal.[2] The average of the three comparables in City's Exhibit II is $215,331.67. The City did not offer the actual report of the court-appointed appraisers into evidence.

At the conclusion of the trial on May 3, 2002, the jury awarded Taylor damages in the amount of $215,332, and the trial court entered judgment accordingly. Taylor filed a Motion to Correct Errors on June 3, 2002, alleging in part:

> The Court erred in denying [Taylor's] objection to the [City's] introduction and reference to the Court Appointed Appraisers and their valuation.
>
> 1. [The City] sought to introduce Mr. Geswein, Mr. Coffman, and Mr. Godby as Court Appointed Appraisers.
>
> 2. [Taylor] objected as to the reference of said witnesses as Court Appointed Appraisers or their valuation identified as such.
>
> 3. The Court overruled [Taylor's] objection and said prejudicial evidence was brought before the jury.
>
> Therefore, in allowing such prejudicial evidence to be admitted, the Court erred according to law.

*Appellant's Appendix* at 268. The trial court summarily denied this motion the following day. Taylor now appeals, arguing that his substantial rights were adversely affected by the jury having knowledge of the identity of the court-appointed appraisers and the valuation in the appraisers' report.

 It has long been established in Indiana that "the amount of the appraisers' award paid into court by the condemnor and upon which award the landowner based his exceptions is not admissible in evidence upon the trial of these exceptions, and it is reversible error to admit it into evidence." *State v. Jordan Woods, Inc.*, 248 Ind. 208, 216–17, 225 N.E.2d 767, 771–72 (1967) ("the jury is not permitted to know the amount of the appraisers' award"); *see also State v. Blount*, 154 Ind.App. 580, 585, 290 N.E.2d 480, 483 (1972) ("[i]n a jury trial the amount of the appraisers' award must be kept from the jury. In fact, its revelation results in reversible error"). We have explained the reason behind such a rule:

> The entire purpose of the appeal to the circuit court was to obtain a reconsideration of the identical question submitted to and determined by the appraisers chosen for the purpose of fixing the damages to appellant for the land and improvements taken by appellee.
>
> The case therefore was to be tried de novo, and the award of damages made by such commissioners and included in their report could not be considered as

---

1. Godby testified on direct examination by the City that he had been appointed by courts to be an appraiser in condemnation cases at least one hundred times over the last twenty years. Godby then specifically testified that he, Coffman, and Geswein "were appointed on March 19th at 9:00" to appraise Taylor's property. *Transcript* at 178.

2. On re-direct examination by the City, Godby explained why this document was not prepared from his notes until after the appraisal:

> We do so many of these that never go to court. To spend all that time to prepare it in package form and type it is just a waste of my client's money, be it the court, be it whatever. So in so many cases we don't prepare that unless it goes on.

*Transcript* at 206.

competent evidence of the proper amount of damages sustained by appellant. This rule is well recognized by the courts of this state. The jury in such cases have but one duty to perform, and that is to assess the damages the defendant will sustain by the appropriation of his land to public use, and have no more right to know what the report or assessment of damages of the appraisers was, or the reasons which influenced that assessment, than any jury in any case has to know what the verdict of a previous jury was in the same case, or the method by which that previous jury arrived at its verdict. On appeal from the commissioners and trial de novo, the report appealed from is not evidence as to the amount of damages.

Though in the present case the appraisers' report itself was not admitted in evidence, the amount of the appraisement and some of the reasons influencing the fixing of that amount were brought in by the testimony of the appraisers, and this was error.

*Halstead v. Vandalia R. Co.*, 48 Ind.App. 96, 95 N.E. 439, 441–42 (1911) (citations omitted).[3]

■ While the amount of the appraisers' award is not admissible, a court-appointed appraiser may testify at trial without reference to the report or his or her previous appointment in the case. Our supreme court has explained in this regard:

If otherwise qualified, the mere fact that he had been an appraiser in a condemnation proceeding would not render him incompetent to testify as to the value of the land. The fact that the appraisers' report is not admissible does not disqualify an appraiser. It is true

the cause is tried de novo, but the appraiser can be examined as to the value of the land independent of the report and without reference to it, and, for that matter, without the jury knowing that he was an appraiser.

*State v. Hamer*, 211 Ind. 570, 579, 199 N.E. 589, 593 (1936).

■ In the instant case, the City clearly brought prejudicial evidence before the jury. Specifically, the jury was made aware of the fact that Geswein, Coffman, and Godby were the court-appointed appraisers in the case. While the actual appraisers' report was not admitted into evidence, each of these witnesses testified regarding the amount of their joint appraisal and how they had arrived at that figure. This was error, to which Taylor made a timely and specific objection. While an admonishment or limiting instruction given by the trial court could perhaps have cured said error, such was not given, as the trial court did not believe there was any error to cure.

■ We cannot agree with the City that said error was harmless, that is that "its probable impact, in light of all the evidence in the case, [was] sufficiently minor so as not to affect the substantial rights of the parties." Ind. Appellate Rule 66(A). Here, the parties presented evidence supporting an award of damages ranging from $180,000 to over $500,000. Apparently relying on the testimony of the court-appointed appraisers and, specifically, City's Exhibit II, the jury awarded Taylor $215,332. We find it possible that the jury found the court-appointed appraisers and their joint evaluation more credible precisely because of the appraisers' prior official involvement in the case.

---

3. We note that the trial court, in *Halstead*, gave detailed limiting instructions to the jury, the effect of which we determined withdrew the prejudicial evidence from the jury's consideration.

Therefore, we conclude that Taylor's substantial rights were affected, and he is entitled to a new trial.[4]

Judgment reversed and remanded.

VAIDIK, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissents with opinion.

I respectfully dissent. Although I agree that the trial court improperly allowed Geswein to testify that he, Coffman, and Godby were court-appointed appraisers, I cannot agree that reversal is warranted in this case.

First, it does not appear that the improper testimony was purposefully elicited. The question by the City was, "Were you asked to appraise the property at 18th and South?" Tr. at 140. A "yes" or "no" answer was all that was sought by the question. Second, although Taylor objected when Geswein gave the inappropriate testimony, he asked only that the testimony of all three court-appointed appraisers be disallowed. After the trial court denied the objection, Taylor stated, "My objection is on the record. That will be sufficient then." Tr. at 143. He did not request a less severe remedy, such as an admonishment to the jury. It may be that the trial court would have denied that motion as well, given that the trial court indicated its mistaken impression that there was nothing improper about the testimony. Nonetheless, I believe that Taylor should have requested an admonishment in order to properly preserve this issue for our re-

view. *See Bardonner v. State*, 587 N.E.2d 1353, 1357 (Ind.Ct.App.1992), *trans. denied* (noting that after his motion for mistrial was denied, defendant did not request the court to take the less severe action of admonishing the jury, which has been held to waive any claim of error.)

In addition, even if the issue were not waived, I believe that the trial court's final instructions to the jury cured any error in the admission of Geswein's testimony. The trial court instructed the jury as follows:

> In determining the value of the property taken and other damages, if any[,] you are not required to accept the opinion of any particular witness. You should arrive at your decision only after carefully considering all of the evidence.

> You are the exclusive judges of the evidence. You should assume that each witness has testified truthfully. If there are conflicts in the evidence, you must reconcile those conflicts, if you can, based on that assumption. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony that you cannot reconcile, you must decide what testimony you believe and what testimony you disbelieve.

Tr. at 260.

Thus, the jury was properly instructed that it was not to place undue emphasis on any particular testimony. The trial court's instructions are presumed to cure any improper statements made during trial. *Peterson v. State*, 699 N.E.2d 701, 704 (Ind.

---

4. The City also claims that Taylor waived any error by eliciting similar testimony from the court-appointed appraisers. We find this argument similarly unavailing. The City relies solely on *State v. Hamer*, in which our supreme court stated, "If on cross-examination, the adverse party sees fit to bring out the fact before the jury that the witness was an ap-

praiser, the harm, if any, should not be charged to the other party." *State v. Hamer*, 211 Ind. at 579, 199 N.E. at 593. In that case, the landowner elicited the prejudicial evidence and then immediately objected to the witness's competency to testify. Such is not the case here.

Ct.App.1998) (in the context of an allegation of improper comments by the State during closing argument). *See also Roberts v. State*, 712 N.E.2d 23, 35 (Ind.Ct. App.1999), *trans. denied* (in the context of an allegation of improper questioning by the State on cross-examination of the defendant).

Even though the trial court improperly allowed evidence that three witnesses had been court-appointed to appraise Taylor's property, I believe the error was cured by the above-quoted instruction to the jury. The jury's verdict was within the scope of the evidence presented, and under these circumstances, I would not reverse and remand for a new trial. I would affirm the jury's verdict, and accordingly, I dissent.