**INDIANA & MICHIGAN ELECTRIC COMPANY, an Indiana Corporation, Plaintiff-Appellant,**

v.

**Bernard E. HURM, Cecelia J. Hurm, Defendants-Appellees.**

No. 1–880A202.

Court of Appeals of Indiana, First District.

June 29, 1981.

Rehearing Denied August 18, 1981.

Thomas W. Yoder of Livingston, Dildine, Haynie & Yoder, Fort Wayne, for plaintiff-appellant.

Jack R. Robinson, Rockport, John R. Werner, Cannelton, for defendants-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant Indiana & Michigan Electric Company appeals the judgment of the Dubois Circuit Court on a jury verdict awarding damages to the defendants-appellees Bernard E. Hurm and Cecelia J. Hurm in an action in eminent domain.

We affirm.

## STATEMENT OF THE FACTS

Bernard E. Hurm and Cecelia J. Hurm, husband and wife (hereinafter called "the Hurms"), owned ten acres of land in Spencer County near Rockport, adjacent to U.S. Highway 231 (also State Road 45) and approximately one mile from the Ohio River. Mr. Hurm was born on the property, and in recent times his son and family resided in a mobile home on the property. The land had been used for grazing and crop-raising, and its improvements included a cinder block building used for storing seed corn, a cinder block wash house, a brooder house, an old barn, a well, and a septic system. The land is near a railroad and it is zoned "planned heavy industrial."

The Indiana & Michigan Electric Company (hereinafter called "I&M") desired this ten acre parcel as part of a site for a new electrical generating station. On June 13, 1977, I&M filed a complaint for condemnation of the fee simple interest in the Hurms' property in the Spencer Circuit Court, to which the Hurms filed objections. On September 16, 1977, the court overruled the objections, ordered the fee simple interest condemned to I&M's use, and appointed appraisers to assess the Hurms' damages. The cause was transferred by change of venue to the Dubois Circuit Court. The issue of damages was tried to a jury, and on February 13, 1980, the trial court entered judgment on the jury's verdict in favor of the Hurms in the amount of $102,500.

## STATEMENT OF THE ISSUES

1. Whether the trial court erred in refusing to permit an I&M witness to testify as an expert to the highest and best use and fair market value of the Hurms' property, because the witness took into consideration information from officers of lending institutions in forming his opinions.

2. Whether the trial court erred in refusing to permit an I&M witness to testify as an expert that the Hurms' property was not suitable for septic tanks for industrial purposes, because the witness lacked sufficient expertise and had not had experience in issuing septic tank permits for heavy industrial uses.

3. Whether the trial court erred in permitting one of the Hurms' witnesses to testify as to what he had read in a transcript of the testimony of I&M's expert witness at the earlier necessity hearing.

4. Whether the trial court erred in admitting evidence of prices paid for other properties, where such properties were not comparable to the Hurms' property.

5. Whether the trial court erred in sustaining the Hurms' objections to the introduction of photographs of properties which the Hurms' expert witnesses had relied upon as comparable properties in arriving at their opinions of fair market value.

6. Whether the damages awarded to the Hurms are excessive.

## DISCUSSION AND DECISION

*Issue One*

I&M contends that the trial court erred in refusing to allow its expert real estate valuation witness David O. Grundhoefer to testify, apparently because he had consulted with loan officers of two banks in the area about real estate values. The Hurms' attorney was given permission to question Grundhoefer out of the jury's presence. Grundhoefer's answers revealed that he could not recall the names of the two loan officers with whom he had spoken. Furthermore, the loan officers had not viewed the Hurms' property and he did not inform them of the identity of the property he was appraising. They gave him only one real estate transaction to use as comparable property, which he did not pursue. Other than that one sale, Grundhoefer and the loan officers did not discuss any specific property but, instead, talked in general terms. One of the loan officers told him that a one-acre building site would probably have a value of about $4,000. Grundhoefer said that his opinion of the fair market value of the Hurms' property was based 25% to 30% upon the opinions of the loan officers. Grundhoefer also viewed the property himself, consulted real estate sales people and appraisers, and studied other comparable properties.

Counsel for the Hurms stipulated that Grundhoefer was qualified as an expert real estate valuation witness but objected to his testifying in this particular case because of his reliance upon the hearsay opinions of the loan officers. Counsel for I&M made an offer of proof by fully examining Grundhoefer out of the jury's presence.

In *Duncan v. George Moser Leather Company*, (1980) Ind.App., 408 N.E.2d 1332, 1343, Chief Judge Buchanan analyzed the various Indiana decisions on the question of when an expert witness may rely upon a report which either has not been admitted into evidence or is not admissible as substantive evidence because it is hearsay:

"In order for the opinion to be admissible (1) the expert must have sufficient expertise to evaluate the reliability and accuracy of the report, (2) the report must be of a type normally found reliable, and (3) the report must be of a type customarily relied upon by the expert in the practice of his profession or expertise."

■ The trial court here would have been justified, under the facts of this particular case, in determining that the information given Grundhoefer by the loan officers was not of a type normally found reliable. Grundhoefer could not even recall the names of the loan officers he consulted, thus impeding the Hurms' ability to cross-examine him regarding the reliability and credibility of the bases of his opinion. In *Duncan v. George Moser Leather Company, supra,* Judge Buchanan said in reference to the first of the three requirements quoted above: "The primary purpose for requiring an expert to have the ability to evaluate the hearsay reports is to afford the nonpresenting party the right to meaningfully cross-examine the witness both as to his actual opinion and the reports and hearsay information upon which he bases his opinion." 408 N.E.2d at 1343. Grundhoefer was stipulated to be an expert in the field, but the lack of identification of some of his sources of information would have limited the Hurms' ability to explore those sources. Moreover, the values of comparable properties, or "comparables," are recognized as valid bases for an opinion of the fair market value of another piece of property. *Trustees of Indiana University v. Williams,* (1969) 252 Ind. 624, 251 N.E.2d 439. However, the trial court reasonably could have concluded that a hypothetical piece of property with an estimated value does not constitute a comparable and is not otherwise a reliable source of information upon which to base an opinion. *Consolidated Traction Co. v. Jordan,* (1905) 36 Ind.App. 156, 75 N.E. 301, cited by I&M, does not stand for the proposition that a valuation witness with personal knowledge of the subject property may give his opinion of fair market value regardless of his reliance upon unreliable hearsay. Consequently, we can-

not say that the exclusion of Grundhoefer's testimony pertaining to the fair market value of the property was error.

■ Although the record is somewhat unclear as to the exact ruling issued by the trial court on the question of the admissibility of Grundhoefer's testimony, it appears that Grundhoefer was permitted to testify before the jury only for the purpose of identifying certain photographs. The Hurms concede that Grundhoefer's consultation with the loan officers would have affected only his opinion as to the fair market value of the Hurms' property and not his opinion as to the highest and best use, which he also stated in I&M's offer of proof. Grundhoefer had opined that the highest and best use was "as a residential site with some small acreage." Grundhoefer stated in I&M's offer of proof that he had inspected the property himself.

At the end of the offer to prove, counsel for I&M re-offered Grundhoefer as a witness to establish the fair market value of the Hurms' property and also to establish the highest and best use of the property. Counsel for the Hurms raised the same objection he had previously made, and the trial court noted it was making the same ruling for the same reason. The trial court, therefore, erred in excluding Grundhoefer's testimony as to his opinion of highest and best use.

In *State v. Hamer,* (1936) 211 Ind. 570, 199 N.E. 589, cited by I&M, a valuation witness in a condemnation case had been one of the court-appointed appraisers to whose report the landowners had filed exceptions. Counsel for the landowner objected to the competency of the witness, and the trial court sustained the objection as to the witness's opinion of the value of the real estate. The supreme court held that the trial court erred in excluding the witness's testimony. The landowners argued that the state had made no offer to prove and that there was, therefore, no error in sustaining the objection. The supreme court said, however, that where the objection is to the competency of the wit-

ness, rather than to the competency of the evidence, no offer of proof is necessary. The landowners further argued that sustaining the objection was not error because the witness's testimony would have been cumulative and because the trial court had discretion to limit the number of witnesses. The supreme court stated that the trial court had not limited the number of witnesses either before the trial or at any other time, but simply refused to permit this witness to testify as to the value of the property. Moreover, the supreme court said that even though his testimony might have been cumulative, it would not cure the error in sustaining the objection regarding competency of the witness.

The only Indiana decision we can find which cites *State v. Hamer, supra,* for the proposition that the cumulative nature of the testimony of a witness ruled incompetent does not render the exclusion of the testimony harmless is *Buuck v. Kruckeberg,* (1950) 121 Ind.App. 262, 95 N.E.2d 304. There, too, the witness erroneously was ruled incompetent.

■ In the case at bar, counsel for the Hurms stipulated that Grundhoefer qualified as an expert valuation witness, but objected to his testimony in this case. It later was brought to light that the basis for the Hurms' objection was that Grundhoefer had relied upon the declarations of the loan officers in reaching his opinions of fair market value. It thus appears that the Hurms' objections went to the *competency of Grundhoefer's proffered opinion* of fair market value rather than to his competency to testify. This being the case, *Hamer* and *Buuck* are distinguishable from our situation. I&M was required to make an offer of proof in order to preserve any error in the exclusion of Grundhoefer's opinions of fair market value and highest and best use. *Carroll v. Ely,* (1980) Ind.App., 398 N.E.2d 1364. Further, because we have the offer of proof in the record before us, we are able to examine it to determine whether Grun-

dhoefer's testimony was incompetent. As we have already observed, the trial court properly excluded Grundhoefer's opinion as to fair market value but erred in excluding his opinion of highest and best use. Because *Hamer* and *Buuck* pertain only to cases where the *competency of the witness* is called into question, we are not precluded from looking at the offer of proof and at the rest of the record to determine whether the exclusion of Grundhoefer's opinion of highest and best use was prejudicial. Error in the exclusion of evidence is not a ground for reversing a judgment unless refusal to reverse would be "inconsistent with substantial justice." Ind.Rules of Procedure, Trial Rule 61.

■ As we noted previously, had Grundhoefer been permitted to testify he would have stated that the highest and best use of the Hurms' property was "as a residential site with some small acreage." Another of I&M's witnesses, Robert J. Sell, testified that the highest and best use of the property was as "a rural residential acreage tract."[1] Because of the similarity of the opinions of Grundhoefer and Sell, we hold that Grundhoefer's opinion of highest and best use would have been cumulative of other evidence presented to the jury and that the exclusion of Grundhoefer's opinion was harmless error.

*Issue Two*

■ I&M next complains that the trial court erred in excluding the opinion of witness Paul E. Boyd as to the suitability of the Hurms' property for septic tank uses for industrial purposes. Boyd is employed by the Spencer County Health Department as an environmental sanitarian. Boyd was shown to be knowledgeable about the soil types on the property and their ability to absorb septic effluent. He was also familiar with a case in Spencer County where a septic tank permit was issued for industrial purposes, but when the system was put into operation the soil would not absorb the

---

1. I&M's other valuation witness, William F. Smith, testified that the highest and best use was "part-time agricultural," and he valued it at \$20,100, slightly less than Sell's appraisal of \$20,800.

water. Boyd is normally consulted by the State Board of Health when an application for an industrial septic tank is filed. On the other hand, Boyd has no official function in the issuance of septic tank permits, and the State Board of Health consults him only if it chooses to do so in a particular case. He has had no experience in issuing septic tank permits for heavy industrial uses.

The trial court excluded Boyd's opinion as to the suitability of the Hurms' property for industrial septic tank uses on the ground that it was not shown that he had sufficient expertise to answer I&M's question. It has been said that a "trial court possesses wide discretion in determining if a witness is qualified to testify as an expert, ... and its ruling will be set aside only if there is a manifest abuse of that discretion." *Lovko v. Lovko*, (1978) Ind.App., 384 N.E.2d 166, 173, *transfer denied*. We cannot say that the trial court committed a manifest abuse of discretion in its ruling on Boyd's opinion testimony.

*Issue Three*

I&M complains that the trial court erroneously permitted the Hurms' expert witness Phil Banawitz to testify to what I&M's expert witness Henry Hall had testified at the earlier necessity hearing concerning the adaptability of the Hurms' property for heavy industrial use. Banawitz had read the transcript of the testimony of Hall and another of I&M's expert witnesses, William Stelle, at the necessity hearing in which the Hurms' property had been ordered condemned to I&M's use. I&M objected to this portion of Banawitz's testimony on the grounds that evidence of the condemnor's need for the land is inadmissible on the issue of the landowners' damages and that Banawitz's testimony as to Hall's opinion was hearsay. In this regard, I&M has brought to our attention the following testimony:

"Q. What did he [Hall] say concerning the adaptability of the Hurm property for heavy industrial use?

"THOMAS YODER: Same objection for all the reasons previously indicated Your Honor.

"JUDGE EVRARD: Alrigh [*sic*] overruled .. go ahead.

"A. He said that locations and sites such as this one were becoming very scarce and that a check had been made along the Ohio in and in Indiana and Kentucky ... he had went on to state that the Ohio River provided channel transportation of coal ... that the industry requires a level site not needing much earth moving ... that they looked at sites all the way to Virginia that were 100 that were considered ... that the Rock ...

"Q. Mr. Banawitz without going into detail on that ... did he make ... indicate in his testimony whether the Hurm property was adaptable for heavy industrial use?

"THOMAS YODER: Object for all the reasons previously assigned plus the fact that that is leading in the highest degree.

"JUDGE EVRARD: Sustained as to form.

"Q. What was Mr. Hall's conclusions at to the adaptability of the Hurm property?

"THOMAS YODER: Same objections for all of the reasons previously assigned.

"JUDGE EVRARD: Overruled ... go ahead.

"A. That highlighting it that the zoning, the vicinity of good roads, a level site, relatively low population, above the flood plane, railroad availability, access to water and the geological foundation of the soils were all ideal for heavy industrial purposes." (Our insertions.)

Banawitz had already testified that, in his opinion, the highest and best use of the Hurms' property was heavy industrial. Prior to the portion of the direct examination of Banawitz quoted above, counsel for the Hurms had questioned Banawitz outside the presence of the jury as follows:

"Q. Mr. Banawitz did you review any testimony that confirmed your opinion as to heavy ind ... the adaptability of the subject property to heavy industrial use?

"A. I did sir.

"Q. And who's testimony did you review concerning the adaptability of this property for heavy industrial use?

"A. The testimony of Mr. Henry M. Hall ... an Electrical Engineer and ...

"Q. Let's confine it to Mr. Hall.

"A. Yes."

It is true, as I&M asserts, that the Fourteenth Amendment to the Constitution of the United States "merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, What has the owner lost? not, What has the taker gained?" *Boston Chamber of Commerce v. City of Boston*, (1910) 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725. Further, the landowner is not allowed to take advantage of the condemnor's need in an eminent domain proceeding. *McGovern v. City of New York*, (1913) 229 U.S. 363, 33 S.Ct. 876, 57 L.Ed. 1228.

This is not to say, however, that uses to which the land is adapted, but to which it is not currently put, may not be considered in determining the highest and best use and, hence, the fair market value. Our supreme court said in *State v. City of Terre Haute*, (1968) 250 Ind. 613, 617, 238 N.E.2d 459:

"It is well settled in Indiana that when land is taken which has a fair market value at the time of its appropriation, the measure of damages is the fair market value for which the land could be sold if the owner was willing to sell. If the land has a higher market value by reason of use or uses to which it may be adapted but to which it has not been put, the owner is entitled to the greater value."

The Supreme Court of Illinois elaborated upon this concept in *Decatur Park District v. Becker*, (1938) 368 Ill. 442, 447–48, 14 N.E.2d 490:

"The value of the land taken to the party taking it is not the test of what should be paid. If, however, entirely apart from the fact that the property was taken for a particular use, it appears that it was exceptionally adapted and availa-

ble for such use, and the necessity for such use was so imminent as to add something to the present value in the minds of possible buyers, that element may be considered in determining the fair cash market value."

With regard to the exercise of the power of eminent domain by public service corporations, the Supreme Court of the United States has said:

"The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. Nor does the fact that it may be or is being acquired by eminent domain negative consideration of availability for use in the public service. *New York v. Sage*, 239 U.S. 57, 61, 36 S.Ct. 25, 26, 60 L.Ed. 143. It is common knowledge that public service corporations and others having that power frequently are actual or potential competitors not only for tracts held in single ownership but also for rights of way, locations, sites, and other areas requiring the union of numerous parcels held by different owners. And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account."

*Olson v. United States*, (1934) 292 U.S. 246, 256, 54 S.Ct. 704, 78 L.Ed. 1236.

I&M cites *State v. Sovich*, (1969) 253 Ind. 224, 234, 252 N.E.2d 582, for the proposition that "neither an increase nor a decrease in the market value of the property sought to be taken, which is brought about by the same project for which the property is being taken, may be considered in determining the value of the property." I&M's reliance upon *Sovich* in the case at bar is misplaced. *Sovich* involved an expert opinion of the value of certain land condemned for use by the State Highway Commission, which opinion was based partly on the future development of the area in question. It became apparent upon cross-examination

that the expert knew the highway project would change traffic patterns and that his opinion of value was based partly upon changes which would occur upon completion of the project for which the property was taken. In the case at bar, Banawitz's testimony does not indicate that Hall's opinion of the highest and best use of the Hurms' property was dependent upon the *completion* of the electrical generating plant which I&M intended to build on the Hurms' land and adjacent properties. Rather, that opinion was directed implicitly to the highest and best use *at the time of the taking*. We came to the same conclusion on a very similar question in *Indiana & Michigan Electric Company v. Spiehler*, (1981) Ind. App., 419 N.E.2d 817.

 Moreover, the factors which Hall recited as supporting his opinion relate to the *adaptability* of the property for heavy industrial use. I&M argues Hall's statements that sites such as this are scarce, that one hundred sites were considered, and that the attributes of this site were ideal go to I&M's need for the Hurms' property. While such factors might have been relevant to the question of I&M's right to condemn the property at the necessity hearing, we cannot say that they were so exclusively directed to need as to render them irrelevant to the question of highest and best use. That a site is superior to others for heavy industrial uses, including electrical generating stations, is clearly relevant to the fair market value of the property where there is a probable demand for such sites.

However, I&M further argues that Banawitz's repetition of Hall's testimony is hearsay and that, even though Hall's declarations were in the form of former, sworn testimony, there was no showing that the Hurms made a significant effort to obtain Hall's presence at the trial on the question of damages.

The Hurms argue that an expert may rely on hearsay so long as it is a type normally found reliable and customarily relied upon in the practice of the profession and the expert uses the hearsay to corroborate his own independently founded opin-ion. They maintain that the hearsay declarant here was Hall, I&M's own witness in the earlier proceedings, so the reliability of the testimony could not be questioned. The Hurms further assert that nothing in the record indicated that this type of testimony would not be used by a land valuation witness and that Banawitz used the hearsay only to confirm his own opinion and not to formulate it.

 However, as I&M suggests, we are not dealing here with a case where the hearsay was merely relied upon by the expert, but rather with a case where the expert also *repeated*, by way of summarization, the statements of the out-of-court declarant. The Appellate Court of Indiana said in *New York Central R. R. v. Pinnell*, (1942) 112 Ind.App. 116, 122, 40 N.E.2d 988, *trans. denied*:

> "In civil cases the testimony of one witness cannot be given in evidence by another in a subsequent trial of the same case, *until it is made to appear* that the original witness is dead, or is insane, or otherwise so physically disabled that by the exercise of due diligence his deposition could not have been taken, or that the witness is a nonresident of the State, or that he is absent from his residence, and his whereabouts cannot, by due diligence, be ascertained, or that he has absented himself by the procurement of the opposite party. *Wabash Railroad Co. v. Miller*, 1902, 158 Ind. 174, 183, 61 N.E. 1005." (Our emphasis.)

This rule is equally applicable where, as here, the second trial was not a retrial of the first but a trial on a different issue. The record discloses no effort to show that Hall's presence for testimony at the hearing on damages could not have been obtained or that his deposition could not have been taken for introduction at the hearing on damages. Consequently, the trial court erred in permitting Banawitz to recount Hall's testimony.

 Further, the observations or opinions of one not present at trial are hearsay and cannot be introduced to confirm or

reinforce an expert witness's testimony where they are offered to show the truth of the matters asserted therein and where the expert arrived at his opinion independently of them. In the case of *In re Guardianship of Carrico v. Bennett*, (1974) 162 Ind.App. 330, 319 N.E.2d 625, the petitioner for termination of the guardianship called a psychiatrist as a witness to give an opinion as to the ward's competency. The psychiatrist testified that her opinion was reinforced by a letter written by another doctor, who did not testify, to an attorney. When the petitioner attempted to introduce the letter, the trial court excluded it, and this court upheld the trial court's ruling on the ground that the letter was hearsay.

█ However, it appears from the record that prior to his discussion of Hall's testimony, Banawitz and another of the Hurms' expert witnesses, John O'Connor, testified from their own investigations that the highest and best use of the property was heavy industrial. Virtually the same factors which Banawitz testified that Hall had mentioned in support of his opinion of highest and best use had already been testified to by either O'Connor or Banawitz. It has been held that where hearsay is erroneously admitted into evidence but it is merely cumulative of other, properly admitted evidence, the admission of the hearsay is not reversible error. *Haskett v. Haskett*, (1975) 164 Ind.App. 105, 327 N.E.2d 612, *trans. denied; Coffey v. Wininger*, (1973) 156 Ind.App. 233, 296 N.E.2d 154, *trans. denied*; T.R. 61, *supra*. Accordingly, we conclude that the trial court's overruling of I&M's hearsay objection was erroneous, but it does not require reversal of the judgment.

### Issue Four

█ I&M complains that the trial court erroneously allowed the Hurms' witnesses O'Connor and Banawitz to testify about sales of properties which were not comparable to the Hurms' land. They argue that these other properties were in built-up areas, had public utilities unavailable to the Hurms, or were much smaller in area than the Hurms' property.

This testimony concerning comparables was not offered, however, as substantive evidence of the value of the Hurms' property but to show the factual basis upon which O'Connor and Banawitz formed their opinions as to the value of the Hurms' property; all such data comprising the basis of the opinion is relevant. *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67. The differences between the comparables and the Hurms' land of which I&M complains go to the weight to be given to O'Connor's or Banawitz's opinion. *Id.; Trustees of Indiana University v. Williams, supra.* We find no error in the trial court's admitting testimony of these comparables.

### Issue Five

█ The trial court refused to admit into evidence four aerial photographs, marked Plaintiff's Exhibits A, B, P, and Q, showing portions of Rockport and the community of Reo where some of the comparables were located. However, with regard to each exhibit, witness O'Connor or witness Grundhoefer testified either that the photograph did not show the area as it existed on the date of one or more of the comparable sales or that he was uncertain whether some of the buildings shown were in existence on the date of the comparable sales. The Hurms' objections to Exhibits A and B were sustained because the photographs were not marked to show what was or was not in the area depicted at the times of the sales of comparables. Although it was not expressly stated by the trial court, the ground for exclusion of Exhibits P and Q was apparently the same as for A and B.

"The admission or exclusion of photographic evidence rests largely within the discretion of the trial court, and the determination made by that court will not be disturbed upon appeal unless it is clearly erroneous." *Thornton v. Pender*, (1978) 268 Ind. 540, 547, 377 N.E.2d 613. "Photographs should be admitted only where they will assist and enlighten the jury. They are not proper where they may serve as a source of confusion or prejudice." *Richmond Gas Corporation v. Reeves*, (1973) 158

Ind.App. 338, 343, 302 N.E.2d 795. The trial court did not abuse its discretion in excluding Plaintiff's Exhibits A, B, P, and Q.

*Issue Six*

Lastly, I&M asserts that "[t]he verdict is, indeed, so excessive as to strike the court at first blush that it must have been the result of mistake, partiality, prejudice or corruption, within the meaning of the Indiana 'first blush' rule." I&M cites no authority in support of this assertion and comes perilously close to waiving this issue. *See* Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105.

 The first blush rule, to which I&M has referred, was announced in the case of *Coleman v. Southwick*, (1812) 9 Johns N.Y. 45, 6 Am.Dec. 253, 254, where Chancellor Kent said:

> " 'It is not enough to say, that in the opinion of the court, the damages are too high and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries ... The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have not standards by which to ascertain the excess.' "

As quoted in *Bonek v. Plain*, (1972) 153 Ind.App. 516, 520, 288 N.E.2d 185. Further, as the Hurms assert, we will not disturb an award of damages in a condemnation suit where the award is within the bounds of probative evidence introduced at trial. *Beyer v. State*, (1972) 258 Ind. 227, 280 N.E.2d 604; *Annee v. State*, (1971) 256 Ind. 686, 271 N.E.2d 711, 274 N.E.2d 260.

 Bernard Hurm testified that the value of his land was $100,000 and the value of the improvements was $20,000. John O'Connor appraised the property at $100,000, attributing $10,200 to the improvements and $89,800 to the land. Phil Banawitz appraised the improvements at $3,000 and the land at $97,000. William Smith appraised the entire property at $20,100, with $2,000 of that attributed to the barn. Robert Sell appraised the property at $20,800. The jury's verdict of $102,500 was within the bounds of the probative evidence.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.