**NAHMIAS REALTY, INC., Appellant (Plaintiff Below),**

**v.**

**Alvin COHEN and Affiliated Agencies, Inc., Appellees (Defendants Below).**

**No. 4–185A16.**

Court of Appeals of Indiana, Fourth District.

Oct. 30, 1985.

Rehearing Denied Dec. 17, 1985.

Michael A. Bergin, Burton M. Harris, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellant.

James R. Fisher, Ice, Miller, Donadio & Ryan, Indianapolis, for appellees.

CONOVER, Judge.

Plaintiff-appellant Nahmias Realty, Inc. (Nahmias) appeals the Marion Superior Court's award of no damages after it found liability as to defendants-appellees Alvin Cohen and Affiliated Agencies, Inc. (Affiliated).

Reversed.

ISSUE

Restated, the sole issue presented by this appeal is whether the trial court's award of no damages after its finding of liability amounts to an inadequate recovery.[1]

1. See, Ind. Rules of Procedure, Trial Rule

FACTS

Nahmias owned a commercial building in Indianapolis. It relied on Affiliated to adequately insure the building against fire loss. Affiliated purchased a fire policy from American Insurance Company (American) which contained a "replacement cost" endorsement, but through clerical error Affiliated failed to insure the building in an amount sufficient to satisfy the policy's co-insurance clause. Affiliated also failed to advise Nahmias it could obtain code update coverage by purchasing a waiver of the standard clause in replacement cost fire policies excluding it. Under code update coverage the insurance carrier after a loss pays the additional cost of modifying the building to conform to current fire and building codes, including the undamaged parts of the building.

In 1977, the building burned, and Nahmias elected to repair it. American, however, refused to pay the full cost necessary to restore the building to its former condition because Nahmias was underinsured. It bought another building. In 1983, the city of Indianapolis condemned the damaged building, paying $250,000 for it as is. Nahmias sued American and Affiliated.

Eventually, Nahmias and American entered into a covenant for $357,000. Affiliated admitted and the court during a bench trial found Affiliated was liable. The court below, however, awarded Nahmias no damages because it determined all sums due Nahmias as damages had been satisfied by American's payment to Nahmias under the covenant. Nahmias appeals.

Further facts are set forth below, as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Our First District, speaking through Ratliff, J., recently stated our standard of review in inadequate damage cases, saying:

We are bound by a very strict standard of review on questions of inadequate or excessive damages. *Barrow v. Talbott*, (1981), Ind.App., 417 N.E.2d 917. We

59(A)(3).

may not reverse a damage award if it is within the scope of evidence before the trial court, and we shall not reweigh the evidence or judge the credibility of the witnesses who presented it. *Indiana University v. Indiana Bonding and Surety Co.*, (1981), Ind.App., 416 N.E.2d 1275. A judgment for damages will be reversed as inadequate only when it is apparent from the evidence that the damages assessed were so small as to convince us that "the trier of fact was motivated by prejudice, passion, partiality, or corruption, or else considered some improper element in arriving at its assessment." *Lindenborg v. M & L Builders and Brokers, Inc.*, (1973), 158 Ind.App. 311, 302 N.E.2d 816, 822.

*English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 311–312, *trans. denied. Accord, Beyer v. State* (1972), 258 Ind. 277, 280 N.E.2d 604, 610; *Annee v. State* (1971), 256 Ind. 686, 271 N.E.2d 711, 712, *reh. denied*, 256 Ind. 686, 274 N.E.2d 260; *Indiana & Michigan Electric Co. v. Hurm* (1981), Ind.App., 422 N.E.2d 371, 381. It is clear the trial court did not enter its award of no damages because of prejudice, passion, partiality or corruption, nor does Nahmias allege the same in this appeal.

▆ Reducing Nahmias's issues to their essence, it claims the award is inadequate because (a) the trial court considered some improper elements in arriving at its assessment, and (b) the amount of the award is not within the scope of the evidence before the trial court. *Durcholz*, 422 N.E.2d at 312. Even if the former is true, Nahmias must unequivocally demonstrate the no damages award is not within the scope of the evidence in this appeal because

> [t]he standard of review applied by this court requires that we affirm a trial court's action if it can be sustained on any legal theory. *Llewellyn v. Beasley*, (1981), Ind.App., 415 N.E.2d 789. We do not presume error by the trial court, and the burden of proving that reversible error occurred is on the appellant. *New York Central Railway Co. v. Milhiser*,

(1952), 231 Ind. 180, 106 N.E.2d 453, *reh. denied* 108 N.E.2d 57; *American Optical Co. v. Weidenhamer*, (1980), Ind. App., 404 N.E.2d 606 (*trans. pending*).

*Durcholz*, 422 N.E.2d at 307. Thus, we will sustain the trial court if its judgment regarding damages falls within the limits established by the probative evidence even though non-probative material and incorrect legal principles were considered incidentally by the trial court in reaching its decision as to damages.

Because the trial court admitted over appropriate objection all kinds of evidence pertaining to the damages suffered by Nahmias because of Affiliated's neglect, we must first discuss the measure of damages which applies in this case, then weed out the non-probative evidence before the court below as it considered this case prior to judgment.

## II.

### A. *Measure of Damages*

▆ If an insurance agent undertakes to procure insurance for his principal and through his fault or neglect fails to do so, the agent is liable to the principal for any damage resulting from his failure. *Bulla v. Donahue* (1977), 174 Ind.App. 123, 126, 366 N.E.2d 233, 236. *See also, State Farm Life Ins. v. Ft. Wayne National Bank* (1985), Ind.App., 474 N.E.2d 524, 528; *Town and Country Mutual Ins. Co. v. Savage* (1981), Ind.App., 421 N.E.2d 704, 707.

▆ The applicable measure of damages in this case is (a) the amount which would have been due under the policy which Affiliated should have obtained for its client Nahmias, *Bulla*, 174 Ind.App. at 128, 366 N.E.2d at 237, plus (b) any consequential damages resulting from Affiliated's breach of duty, *see, e.g., State Farm Life Ins. v. Ft. Wayne National Bank*, 474 N.E.2d 524 (increased estate taxes); *Town and Country Mutual Ins. Co. v. Savage*, 421 N.E.2d 704 (prejudgment interest for the amount of the claim

which can be ascertained), less (c) the cost of unpaid premiums or cost of insurance. *Joseph Forest Prod's., Inc. v. Pratt* (1977, Sup.Ct.Org.) 278 Or. 477, 564 P.2d 1027, 1029; *Greenfield v. Insurance, Inc.* (1971) 19 Cal.App.3d 803, 97 Cal.Rptr. 164, 169–170; 44 C.J.S. *Insurance* § 172, p. 863. No particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by probative evidence, but it may not be based upon mere conjecture, speculation, or guess work. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, 438; *Lloyds of London v. Lock* (1983), Ind.App., 454 N.E.2d 81, 83, modified at 455 N.E.2d 967; *Colonial Discount Corp. v. Berkhardt* (1982), Ind.App., 435 N.E.2d 65, 67. Where there is doubt as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer. *Indiana Tri-City Plaza Bowl v. Glueck's Estate* (1981), Ind.App., 422 N.E.2d 670, 678; *Friendship Farms Camps, Inc. v. Parson* (1977), 172 Ind.App. 73, 80, 359 N.E.2d 280, 284; *Gene B. Glick Co., Inc. v. Marion Construction Corp.* (1975), 165 Ind.App. 72, 331 N.E.2d 26, 38, *reh. denied*, 165 Ind.App. 72, 333 N.E.2d 140.

### B. *Probative Evidence*

█ Any award of damages (in this case no damages) must be supported by probative evidence. *Whiteco Properties, Inc.*, 467 N.E.2d at 438; *Lloyds of London*, 454 N.E.2d at 83; *Colonial Discount Corp.*, 435 N.E.2d at 67.

The word probative is defined as follows:

In the law of evidence. Having the effect of proof; tending to prove, or actually proving.

Testimony carrying quality of proof and having fitness to induce conviction of truth, consisting of fact and reason co-operating as co-ordinant factors. *Globe Indemnity Co. v. Daviess*, 243 Ky. 356, 47 S.W.2d 990, 992.

Black's Law Dictionary, Revised 4th Edition, p. 1367. Before we proceed further, we believe it necessary to determine what

evidence before the trial court was non-probative vis-a-vis that which was.

█ It is uncontested in this record Nahmias wanted its building restored to its former condition under the repair and replacement provisions of the policy (R. 799), but it was not restored because neither American nor Affiliated would guarantee payment for the repairs. (R. 919–921). Thus, only the measure of damages above noted was appropriate in this case. Nahmias sought replacement cost insurance not reimbursement for the actual cash value of the property at the time the loss occurred. But for Affiliated's neglect, Nahmias would have so recovered. We discuss replacement cost insurance as applicable in this case below. Here we note, the damage concepts of fair market value, fair cash value, fair rental value, etc., have no applicability in this case. The evidence and the trial court's findings concerning such evidence were not material and thus were irrelevant. Relevancy is the logical tendency of evidence to prove a material fact. *State v. Hall* (1982), Ind., 432 N.E.2d 679, 682; *Lake County Council v. Arredondo* (1977), 266 Ind. 318, 363 N.E.2d 218, 220; *McClamroch v. McClamroch* (1985), Ind. App., 476 N.E.2d 514, 518. Materiality looks to the relationship between the evidence offered and the issues in the case. Thus, if logically relevant evidence is offered to prove a proposition which is not a matter in issue, such evidence is evidentially irrelevant because it does not tend to prove any issues in the case, i.e., such evidence is immaterial. Discussing the relationship between these two evidentiary concepts, Smith, J., said

To be material, evidence sought by a question must tend to prove or disprove a fact which relates to an issue in the lawsuit. *McKee et al. v. Hasler et al.*, 229 Ind. 437, 469, 98 N.E.2d 657 (1951); McCormick, Handbook of the Law of Evidence, § 152 (1954). Whereas materiality deals with the relationship between the issues of the case and the fact which the evidence tends to prove, relevancy deals with the requirement that the evidence must logically tend to prove a ma-

terial fact. *Hancock Truck Lines v. Butcher*, 229 Ind. 36, 43, 94 N.E.2d 537 (1950).

*Estate of Azimow v. Azimow* (1967), 141 Ind.App. 529, 230 N.E.2d 450, 451–452. Thus, any evidence to have probative force must be relevant and material. Evidence without probative force should be rejected. *Equitable Life, etc., Society v. Campbell* (1926), 85 Ind.App. 450, 150 N.E. 31, 34, *reh. denied*, 85 Ind.App. 450, 151 N.E. 682.

 Evidence concerning the City of Indianapolis's purchase of the building in 1983 for $250,000 (finding 18) is also immaterial and thus non-probative because compensation received from a collateral source independent of the wrongdoer, cannot be set up by the wrongdoer in mitigation, *cf. Aldridge v. Abrams & Hawkins Excavating Co.* (1985), Ind.App., 474 N.E.2d 107, 108, *trans. denied.*

 On appeal, non-probative evidence or trial court findings regarding such evidence may not be relied upon in the support of the judgment. The judgment must be supported by substantial evidence having probative value. *F.D. Borkholder Co., Inc. v. Sandock* (1980), 274 Ind. 612, 413 N.E.2d 567, 569. Thus, we here consider only the evidence and trial court findings which bear upon the proper elements of damage which we recited above.

### III. *Evidence on Damages*

#### A. *Replacement Cost Insurance*

Prentice, J., cogently discussed replacement cost insurance vis-a-vis an "actual cash value" policy recently. Speaking for the court, he said

> [t]he actual cash value policy is a pure indemnity contract. Its purpose is to make the insured whole but never to benefit him because a fire occurred. (citing authority) Replacement cost coverage, on the other hand, reimburses the insured for the full cost of repairs, *if he repairs or rebuilds the building,* even if that results in putting the insured in a better position than he was before the loss. [Emphasis in original]. ...

> Replacement cost insurance [as opposed to an actual cash value policy] is not a pure indemnity agreement. It is an optional coverage that may be purchased and added to a basic fire policy by endorsement. It is more expensive because the rate of premiums is higher and the amount of insurance to which that rate applies is usually higher. ...

> When the insurance industry adopted a standard extension of coverage endorsement to provide replacement cost, it took into account the one great hazard in providing this kind of coverage: the possibility for the insured to reap a substantial profit, if fire occurs. *See Higgins v. Insurance Co. of North America,* (1970) 256 Or. 151, 469 P.2d 766, 66 A.L.R.3d 871 and the annotation beginning at 66 A.L.R.3d 886.

> The cost of repair may exceed the fair market value of the building, *and in the case of very old or obsolescent buildings, the difference may be very substantial.* To permit recovery of the cost of repair, without also requiring the repairs to be made *usually provides an even greater windfall than is provided when repairs are made.* In effect the insured sells his building not at its market value but at a much higher figure and for cash. (Emphasis in this paragraph supplied).

*Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 352–353.

 Affiliated argues if Nahmias is permitted to recover replacement cost and the cost of code update as to its building, it will reap a "windfall." Justice Prentice's pointed observations above quoted, clearly answer that argument. Any "windfall" resulting to an insured who purchases replacement cost insurance is not objectionable. It is precisely what he contracted to receive in the event of a loss.

As to replacement cost, Plaintiff's Exhibit No. 8, the policy Affiliated purchased for Nahmias, provided in pertinent part

REPLACEMENT COST ENDORSEMENT

. . . . .

1. In consideration of One Dollar ($1.00) and the following Coinsurance Clause being made a part of this policy ... the provisions of this policy applicable only to such item(s) are amended to substitute the term "replacement costs without deduction for depreciation" for the term "actual cash value" wherever it appears in this policy,

. . . . .

5. The Insured may elect first to make claim under this policy in accordance with its provision, disregarding this endorsement, ...; and the Insured may make further claim for any additional brought about by this endorsement in accordance with its provisions, provided this Company is notified in writing within 180 days after loss of the Insured's intent to make such further claim.

6. This Company's liability for loss under this policy including this endorsement shall not exceed the smallest of the following amounts (a), (b) or (c)—

(a) The amount of this policy applicable to the damaged or destroyed property;

(b) The replacement cost of the property or any part thereof, identical with such property on the same premises and intended for the same occupancy and use;

(c) The amount actually and necessarily expended in repairing and replacing said property or any part thereof on the same premises.

(R. 1051).

Under the replacement cost endorsement quoted above, it is obvious Nahmias would have claimed the building's actual cash value. Using that sum as seed money, it next would have reconstructed the building, then filed an additional claim with American within 180 days to recoup the difference between the amount American paid under the first claim and Nahmias's total cost to reconstruct the building and update it to current applicable codes (discussed below), all without reference to the building's "fair cash value" before the fire.

■ Thus, the first element of damage properly considered by the trial court was the actual cost to restore the building to its condition just before the fire. Evidence concerning the building's actual cash value was irrelevant and immaterial, and thus non-probative.

■ However, Affiliated further argues under the policy, Nahmias was required to reconstruct the building completely before any liability to pay replacement and code update costs attached as to Affiliated. We disagree.

■ Affiliated was not a party to this contract. Just as one not a party to a contract has no standing to enforce it, *State v. Williamson Polishing & Plating Co., Inc.* (1979), 179 Ind.App. 158, 384 N.E.2d 1114, 1115; *Cook v. City of Evansville* (1978), 178 Ind.App. 20, 381 N.E.2d 493, 494, as a general rule a defense based upon the terms of a contract may be asserted only by a party thereto who urges it in his own defense. 17A C.J.S. *Contracts* § 528. Such defense may not be asserted here by Affiliated, a non-party to the insurance contract. It was available only to American.

### B. *Code Update Coverage*

■ The replacement cost endorsement also provided

. . . . .

3. This Company shall not be liable under this policy including this endorsement for any loss—

(a) Occasioned by enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings unless such liability has been specifically assumed under this policy:

. . . . .

Had this section been waived, code update coverage would have been available to Nahmias. Because Affiliated did not advise its client this section could be waived, it was not available to Nahmias when the building burned. Thus, the next probative

evidence properly considered by the trial court was the cost to bring both the damaged and undamaged parts of Nahmias's reconstructed building into compliance with all applicable building codes, this in addition to the replacement cost of the building.

### C. *No Damages Award Inadequate*

■ The trial court's findings numbered 13 and 14 deal with these subjects. They provide

. . . . .

13. The cost of repairing the fire damage to restore the building to the same condition it was in before the fire was determined by agreement of appraisers selected by American and Realty [Nahmias] to be $343,750.00.

14. The additional cost of updating the building to meet existing code requirements to actually restore and reoccupy the premises lawfully was estimated by Jungclaus, a contractor employed by Realty [Nahmias] to evaluate the repair cost to be $20,000.00....

The total of these two figures ($343,750 and $20,000) is $363,750. Offsetting the total amount American paid Nahmias under the covenant, $357,500, *cf.* finding no. 19, it is clear the trial court's award of no damages is insufficient under the court's own figures in the amount of $6,250.

Reversed and remanded for a new trial on damages only.

BUCHANAN, C.J. (sitting by designation), and YOUNG, P.J., concur.