Robert D. DUNN, Appellant
(Plaintiff Below),

v.

Samson S. CADIENTE, M.D., Appellee
(Defendant Below).

No. 4–1285A338.

Court of Appeals of Indiana,
Fourth District.

Feb. 10, 1987.

Morris L. Klapper, Indianapolis, for appellant.

Richard L. Fairchild, Donn H. Wray, Stewart Irwin Gilliom Meyer & Guthrie, Indianapolis, for appellee.

CONOVER, Presiding Judge.

Plaintiff-Appellant Robert D. Dunn (Dunn) appeals the trial court's award of damages favoring him in the sum of $24,065.00, plus costs, as being inadequate after it found liability as to Defendant-Appellant Samson S. Cadiente, M.D. (Cadiente).

We reverse.

ISSUES

Dunn presents two issues for our review. We consolidate and restate them as the following single issue:

whether the trial court's award is inadequate.

FACTS

On November 7, 1980, Dunn was employed as a meat cutter at a grocery store. While carrying a forequarter of meat, he slipped and fell. As a result of this mishap, Dunn sustained bilateral inguinal hernias. In December, 1980, Cadiente performed right and left inguinal hernia surgeries on Dunn.

In April, 1981, Cadiente readmitted Dunn to the hospital because he was continuing to experience considerable pain in the groin area. Cadiente re-operated on Dunn and found a partially entrapped spermatic cord and hydrocele, but no recurrent hernia.

After the surgery, Dunn's right thigh became generally painful and swollen. Cadiente, then suspecting phlebitis or arterial thrombosis, ordered a vascular consultation. Dr. Malcolm Herring (Herring), a vascular surgeon, saw Dunn and suspected he had an infection. He recommended foregoing anticoagulant therapy in favor of antibiotics. After seeing no improvement with Dunn, Cadiente again operated on him on April 29, 1981. During this surgery, Cadiente found Dunn to have a thrombosed right saphenous vein (a superficial vein). On May 8, 1981, Cadiente discharged Dunn from the hospital. A few days later, at an office visit, Cadiente noted Dunn's leg was still swollen and painful. Cadiente last saw Dunn on May 29, 1981.

On June 4, 1981, Dunn again saw Herring. Herring suspected from Dunn's symptoms he was now suffering from problems in the deep venous system. A venous flow study confirmed his suspicions Dunn had developed a deep venous insufficiency problem. Herring further stated Dunn was suffering symptoms associated with an earlier attack of phlebitis (postphlebitic syndrome).

Dunn's condition became cumulatively worse to the point where it was difficult for him to engage in activities which required him to stand or sit for any prolonged periods of time because his leg would become swollen and painful. Later, Herring noted Dunn developed recurring thromboses.

Dunn alleges Cadiente "... negligently failed to exercise reasonable skill, care and diligence in his treatment ...", and as a result, he sustained "... permanent injuries...." (Complaint, R. 32). At the close of plaintiff's case, Cadiente filed a motion to dismiss a portion of Dunn's claims. This motion was granted which resulted in the following issue before the trial court:

1. Any claim or allegation of negligence other than the claim that the De-

fendant failed to meet the appropriate standard of care during the period of April 26, 1981 (the day after Dr. Herring's consultation) and May 29, 1981 (when Dr. Cadiente referred the Plaintiff to Dr. Herring). The only issue of fact in this case is whether during that period of time the Plaintiff had any sign(s) or symptom(s) which would have caused a reasonably prudent surgeon to administer anticoagulant therapy, order any study designed to reveal the presence or absence of deep vein thrombosis or deep vein insufficiency or to seek further consultation from Dr. Herring or any other vascular surgeon.

(Motion to Dismiss, R. 94). The trial judge entered judgment "for the Plaintiff and against the Defendant" and assessed Plaintiff's damages in the sum of $24,065 and costs.

Dunn now appeals the trial court's award, after finding Cadiente liable for his condition, as being an inadequate recovery.

Further pertinent facts appear below.

*DISCUSSION AND DECISION*

### I. *Standard of Review*

This court recently stated the standard of review for cases alleging an inadequate award of damages in *Nahmias Realty, Inc. v. Cohen* (1985), Ind.App., 484 N.E.2d 617, *trans. denied.* Quoting Judge Ratliff in *English Coal Co. v. Durcholz* (1981), Ind. App., 422 N.E.2d 302, 311–312, we stated:

> We are bound by a very strict standard of review on questions of inadequate or excessive damages. *Barrow v. Talbott*, (1981), Ind.App., 417 N.E.2d 917. We may not reverse a damage award if it is within the scope of evidence before the trial court, and we shall not reweigh the evidence or judge the credibility of the witnesses who presented it. *Indiana University v. Indiana Bonding and Surety Co.*, (1981), Ind.App., 416 N.E.2d 1275. A judgment for damages will be reversed as inadequate only when it is apparent from the evidence that the damages assessed were so small as to convince us that "the trier of fact was motivated by prejudice, passion, partiality, or

corruption, or else considered some improper element in arriving at its assessment." *Lindenborg v. M & L Builders and Brokers, Inc.*, (1973), 158 Ind.App. 311, 302 N.E.2d 816, 822.

484 N.E.2d 619, 620.

■ Dunn does not allege in his appeal, nor was it alleged in *Nahmias* that prejudice, passion, partiality, or corruption influenced the trial court's decision. However, Dunn asserts the award is inadequate because (a) the trial court considered some improper element in arriving at its assessment, and (b) the amount of the award was not within the scope of the evidence before the trial court. Even if the trial court considered improper elements in assessing the damages, Dunn must unequivocally demonstrate the award was not within the scope of evidence before the trial court. *Nahmias, supra*, at 620. We do not presume the trial court committed error. We will affirm a trial court's decision if it can be sustained on any legal theory. *Id.* Thus, the burden of proving reversible error is on the appellant. *Id.*

■ In discussing the appellant's burden of proving error, this court, quoting from the case of *Thompson v. Town of Fort Branch* (1931), 204 Ind. 152, 163, 178 N.E. 440, 444, said:

> "It is not necessary either that appellant show, or that this court determine, the exact cause or nature of the error in assessment of the amount of recovery. Error in assessment is established if, as in the present case, it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff."

*McNall v. Farmers Ins. Group* (1979), 181 Ind.App. 501, 392 N.E.2d 520, 525, *trans. denied.* Therefore, an error in assessment will be presumed if it *clearly appears* from *uncontradicted evidence* there is not a reasonable relationship between the loss suffered by the injured party and the amount of damages awarded.

## II. *Measure of Damages*

■ The purpose of a damage award is to impose a pecuniary compensation, recompense, or satisfaction for an injury done, or a wrong sustained by a party. *Indiana University v. Indiana Bonding & Surety* (1981), Ind.App., 416 N.E.2d 1275, 1288. When determining the measure of damages awarded for injuries to the person, the court must generally evaluate the following elements:

1. reasonable and necessary medical, hospital, nursing and related expenses,

2. loss of earnings,

3. impairment of earning capacity,

4. past and future physical pain and suffering,

5. past and future mental pain and suffering,

6. the nature, extent and permanency of the injury as it affects the quality and enjoyment of life, and

7. disfigurement or deformity.

*Grubbs v. U.S.*, 581 F.Supp. 536, 540–541 (D.C.Ind.1984).

■ The amount of damages awarded may not be based upon mere conjecture, speculation, or guesswork; however, no particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by probative evidence. *Nahmias, supra,* at 621. There, we said:

> The word probative is defined as follows:
>
> > In the law of evidence. Having the effect of proof; tending to prove, or actually proving.
> >
> > Testimony carrying quality of proof and having fitness to induce conviction of truth, consisting of fact and reason cooperating as coordinate factors. *Globe Indemnity Co. v. Daviess*, 243 Ky. 356, 47 S.W.2d 990, 992.
>
> Black's Law Dictionary, Revised 4th Edition, p. 1367.

We now turn to the probative evidence before the trial court.

## III. *Evidence on Damages*

### A. *Medical and Hospital Expenses*

Evidence introduced at trial showed Dunn incurred the following medical expenses related to treating his condition:

| | |
|---|---:|
| Russell Dilley, M.D. | $2,000.00 |
| Malcolm Herring, M.D. | $95.00 |
| Misc. Hospital and Medical expenses | $9,470.55 |
| Gallahue Mental Health Center | $142.00 |

The above expenses total $11,707.55.

Russell Dilley, M.D., was Dunn's treating physician at the time of trial. He testified Dunn's prognosis was guarded, and his condition would require future medical care.

■ The proper measure of medical expenses is the reasonable value of such expenses. *Herrick v. Sayler*, 160 F.Supp. 25, 29 (D.C. Ind.1958); *Kampo Transit, Inc. v. Powers* (1965), 138 Ind.App. 141, 211 N.E.2d 781, 793. The actual amount charged to the plaintiff, or the amount actually paid by him, may tend to prove the reasonable value of medical services rendered him. *Herrick, supra,* at 29. The above evidence was uncontroverted and undisputed by any evidence presented by Cadiente.

### B. *Lost Income*

■ Dunn began working at the grocery store in April, 1979. He was working 40 or more hours per week prior to his accident. Phillip Deuser, the owner of the grocery store, testified he would have continued to employ Dunn since he was satisfied with his work. He further testified Dunn received pay raises approximately every four months, and when Dunn was last employed at the time of his accident, he was earning $4.35 per hour. At that rate of pay, Dunn's lost earnings for the remainder of 1981 amounted to approximately $4,500. Mr. Deuser testified Dunn's yearly pay in 1982 would have been approximately $12,000, and in 1983 and 1984, approximately $15,000 each year. At this latest annual rate, Dunn's lost earnings for 1985 up to the time of trial amounted to approximate-

ly $7,500. The total lost income up to the date of trial totaled approximately $54,000. An injured party is entitled to collect any loss of earnings; both to the date of trial and in the future. *Grubbs, supra,* at 541; *Stauffer v. Lothamer* (1981), Ind.App., 419 N.E.2d 203, 215. The above evidence was uncontroverted and undisputed by any evidence presented by Cadiente.

### C. *Impairment of Earning Capacity*

The concept of impairment of earning capacity means the impairment of the ability of the injured party to engage in his vocation, as distinguished from his lost earnings. *Duchane v. Johnson* (1980), Ind. App., 400 N.E.2d 193, 196; *Barker v. Cole* (1980), Ind.App., 396 N.E.2d 964, 968. The basic measure of damages for the impairment of earning capacity is the difference between the amount which the injured party is capable of earning before the injury, and the amount which he is capable of earning thereafter. *Id.* This element is distinct from the element of lost earnings. *Id.*

Dunn made brief attempts to work following his various surgeries. Each attempt resulted in failure in short order due to the swelling and pain in his leg. He cannot stand or sit for long periods of time without his leg becoming swollen and painful. The evidence further showed Dunn was adjudged disabled by the Social Security Administration which found Dunn's "... impairments prevent him from performing even sedentary work activity." (Plaintiff's exhibit No. 4, R. 364). Dr. Dilley further testified Dunn is no longer able to engage in his former work. Therefore, Dunn has not only been deprived of loss of earnings, he has also been deprived of the enjoyment of employment and earning capacity he once held.

The above evidence was uncontroverted and undisputed by any evidence presented by Cadiente.

### D. *Other Measures of Damages*

Here, the record is replete with evidence of both physical and mental pain and suffering which Dunn experiences due to the problems with his legs, and the nature, extent, and permanency, of his condition.

It is the general rule in Indiana a person cannot recover damages for mental suffering unless he sustains physical injury. *Indiana Motorcycle Association v. Hudson* (1980), Ind.App., 399 N.E.2d 775, 779. However, mental pain and suffering, like physical pain and suffering is compensable without offering specific evidence as to monetary value. *Grubbs, supra,* at 542.

An individual is also entitled to compensation for the loss of use, or the loss of function, of a part of his body irrespective of the other elements to the damage award. He is entitled to the full function of his body, and any loss or disability thereof is in itself compensable because of its effect upon the quality and enjoyment of life which would not have been impaired but for his injury. *Grubbs, supra,* at 541. The evidence showed Dunn is no longer able to perform the work he once did or to participate in the recreational activities he once enjoyed. Further, he cannot stand or sit for any length of time without his leg becoming swollen and painful. His physician further testified his leg will never again be fully functional.

The above evidence was uncontroverted and undisputed by evidence presented by Cadiente.

### IV. *Present Award Inadequate*

The uncontradicted amount of medical expenses and loss of income at the time of trial totaled over $65,000. Dunn further presented the court with uncontradicted probative evidence of additional compensable damages, as discussed above.

In light of the trial court's judgment finding Cadiente liable for damages on Dunn's claims, it clearly appears from the uncontradicted evidence there is no reasonable relationship between the loss suffered by Dunn, and the amount of damages he was awarded. Therefore, we may presume an error was made in assessing damages. (*See, McNall, supra* ).

Reversed and remanded for a new trial on damages only.

MILLER and BUCHANAN (sitting by designation), JJ., concur.